Nancy M. SWEENEY,
Plaintiff-Appellant,

v.

The RESEARCH FOUNDATION OF the
STATE UNIVERSITY OF NEW
YORK, Defendant-Appellee.

No. 917, Docket 82–7842.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1983.

Decided June 29, 1983.

Arthur McGinn, Albany, N.Y. (McGinn & Brown, P.C., Albany, N.Y., of counsel), for plaintiff-appellant.

Edward L. Bookstein, Albany, N.Y. (Kohn, Bookstein & Karp, Albany, N.Y., of counsel), for defendant-appellee.

Before PIERCE, WINTER and PRATT, Circuit Judges.

PIERCE, Circuit Judge:

Nancy M. Sweeney appeals from an order of the United States District Court for the Northern District of New York, Roger J. Miner, Judge, entered October 15, 1982, denying relief for alleged acts of sex discrimination which she claims were committed against her by defendant-appellee Research Foundation of the State University of New York (Research Foundation) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1976). Specifically, Sweeney alleges that she was denied appointment as a Systems Analyst in 1972 and thereafter because of her sex. The district court held that Sweeney had not proven a Title VII violation in that she had failed to carry her burden of persuading the court that appellee's acts were motivated by a discriminatory animus. The issues we address on appeal are: (1) whether plaintiff-appellant met her burden of establishing a prima facie case of a violation; (2) if so, whether defendant-appellee met its burden of going forward and presenting a legitimate, non-discriminatory basis for its action, and (3) if so, whether plaintiff-appellant met her burden of persuading the court that the acts in question were, nevertheless, motivated by a discriminatory animus.

For the reasons set forth below, we affirm the district court's holding that appellant established a prima facie case; that appellee met its burden of going forward; and that appellant failed to meet her burden of persuasion.

## I. *Facts*

Appellee Research Foundation is an educational, non-profit corporation, chartered by the New York State Board of Regents in 1951 and existing under New York law. Its corporate purposes include the receipt and administration of grants and contributions for the benefit of the State University of New York and the financing of studies and research in the arts and sciences. Sweeney was hired by appellee in 1959 and has been employed by appellee since then for all but two years. During the early part of her employment with Research Foundation, appellant held several non-professional positions, including Accounts Payable Supervisor, Payroll Clerk, and Grant Accountant. In October, 1968, she was promoted to Personnel Assistant in the Foundation's Administrative Division, which was headed by Winifred Widmer. This constituted her first "professional level" assignment and followed her earning a Bachelor of Arts degree from Russell Sage College. Personnel Assistant was a professional grade level P–6 position.[1] As a Personnel Assistant, Sweeney recruited persons to fill vacancies that occurred in the organization. Her performance in that position was considered excellent, and her salary was increased accordingly. However, according to her trial testimony, Sweeney felt frustrated in that position because her duties included minority recruitment in an affirmative action program, and she felt that appellee was not committed to the program.

In July, 1970, Sweeney was promoted to the position of Overseas Travel Specialist, a professional grade level P–5 position,[2] which was one grade level higher than the Personnel Assistant position. As Overseas Travel Specialist, she worked within the Foundation's Information Services Division, coordinating student overseas travel programs established at various State University campuses throughout the state. She was also assigned certain duties related to systems analysis and design. The Foundation's travel program was eliminated in the summer of 1971, and her coordinating functions terminated at that time. She was then assigned additional duties normally performed by Systems Analysts, such as developing procedures to be translated to computer programs for the payroll system. In September and October of 1971, she was enrolled at appellee's expense in three

---

1. In the Research Foundation's professional organizational structure, the lower the employee's numerical grade level, the higher the annual salary.

2. At the time of Sweeney's appointment to this position, it was reclassified from a grade level P–6 to a grade level P–5.

courses, each lasting several days, dealing with computer hardware and systems analysis.

The Overseas Travel Specialist position was eliminated in April, 1972. On April 1, 1972, Sweeney was transferred from the Information Services Division back to the Administrative Division and she resumed the title of Personnel Assistant. This transfer was made despite her expressed desire to remain in the Information Services Division as a Research Analyst, and the expressed desire of James Dillon, Assistant Director for that Division, that she remain in an Analyst position. It appears that at that time, 1972, there were no Systems Analyst openings and the Foundation was operating on an "austerity budget." At the time of the transfer, Sweeney's salary remained the same as it had been in the Overseas Travel Specialist position, but her grade level was decreased from a P–5 to a P–6, with a lower maximum annual salary.[3] As Personnel Assistant, she was once again assigned to coordinate affirmative action programs. In addition, she coordinated major systems conversions to computer utilization.

In August, 1972, appellant was transferred to the position of Senior Administrative Assistant, also a grade level P–6 position, in the Administrative Division. In this position, Sweeney did work in the publications area.[4] This transfer was made in response to her assertion that her ability to perform her affirmative action functions was impaired by what she perceived to be a continuing lack of commitment by the Foundation to the program. She has remained in that position since that date, has consistently done work in the publications area, and currently serves as Editor of the publication "SUNY Research 82." Since 1972, her salary has increased from $11,150 on April 6, 1972 to $22,155 as of March 18, 1982 and her professional classification has been upgrad-

ed. She testified at trial that she presently finds her position in the publications area to be "quite rewarding" and her career direction "quite satisfactory."

Sweeney asserts that in the years between 1972 and 1978, she continued to express an interest in a Systems Analyst Position, and that a number of openings for Systems Analysts occurred during that period. In particular, on November 1, 1972, a male Junior Systems Analyst was promoted to Systems Analyst; one Systems Analyst vacancy was filled by a male in April of 1973, and another in June of 1974, also by a male. Moreover, she asserts that between 1968 and 1972, fifteen males and no females were employed as Systems Analysts. She concedes that as of July, 1978, she was no longer qualified for a Systems Analyst position.

In a letter dated July 25, 1972, from Sweeney to the United States Federal Contracts Compliance Division, Office of Civil Rights, Department of Health, Education and Welfare, she registered a complaint of "unfair and unequal employment treatment," and charged that appellee was guilty of sex discrimination which she claimed was evidenced by "the April 1, 1972 demotional transfer." In a letter dated August 28, 1972, the Federal Contracts Compliance Division informed Sweeney that her complaint had been sent to the Equal Employment Opportunity Commission (EEOC). Following various proceedings, she filed a formal charge with the EEOC on September 9, 1974, incorporating the above complaint charging sex discrimination and citing the alleged demotional transfer. Another reason assigned for the alleged unfair treatment was the possible rivalry between Division Heads Widmer (Administrative Division) and Dillon (Information Division). Regarding the alleged demotion, she stated:

3. As of April 1, 1972, the maximum annual salary for a professional grade level P–5 position was $14,900, while that for a P–6 position was $13,900.

4. Sweeney testified that initially, she did not have many assignments in that position. The

assignments she did have included making charts, punching out letters on a "variatype" machine, and making "pie charts." In 1973, however, she began to receive more substantial assignments in publications, and she began to develop skills in that area. She also took courses in journalism and publications.

I do not know why a Lateral Transfer could not have been made, in other words, making this Federal Affirmative Action job on the same Professional Grade 5 level as was the Overseas Travel Specialist. But as I have already eluded [sic] above to the "Rivalry" between the two Division Heads [Dillon and Widmer], I find it very understandable that this demotion evened the "score." Miss Widmer, by having me back in her Division, evened the "score" with Mr. Dillon, and by demoting me, she is punishing me for "putting in with the enemy" as it were, in the summer of 1970.

In a Determination dated February 17, 1977, the EEOC found that reasonable cause existed to believe that Sweeney was discriminated against because of her sex in violation of Title VII. In reaching this conclusion, the Commission noted the employment by appellee of 15 males from 1968 to 1977 for the position of Systems Analyst, and cited more general statistics of appellee's employment practices showing that women were "still concentrated in lower-paying jobs."

An attempt was made to conciliate. According to appellant, on March 27, 1978, three and one-half years after she filed her complaint with the EEOC, the Commission informed her that it was unable to obtain voluntary compliance by informal methods, and that the matter was being referred to the Department of Justice pursuant to 42 U.S.C. § 2000e–5(f)(1). It appears that, on May 10, 1978, the Justice Department informed her that it would not file suit, and gave her a 90 day notice of her right to sue pursuant to 42 U.S.C. § 2000e–5(f)(1).

Sweeney filed a complaint dated July 27, 1978 in the United States District Court for the Northern District of New York. She alleged therein that the Foundation had violated 42 U.S.C. §§ 1981, 1983, 1985,

2000e–5, and the laws of the State of New York.[5] As a result of these violations, she alleged that she lost considerable pay and benefits, including overtime compensation, by reason of defendant's unlawful discrimination against her, and that she suffered "severe humiliation, mental anguish, pain, suffering, and distress" resulting in consequential damages of $1,000,000 and punitive damages of $1,000,000. In addition to seeking recovery of these alleged losses, she sought injunctive relief directing her reassignment to a Systems Analyst position.[6]

The case was tried to the court on June 18 and 21, 1982. The district court found that Sweeney had presented a prima facie case of sex discrimination. The court found further that the Research Foundation had carried its burden of producing legitimate and non-discriminatory reasons for the failure to appoint appellant. In particular, the court credited appellee's argument that placing Sweeney in the Administrative Division was a rational exercise of management discretion given her previous experience in the affirmative action area and her expertise in the systems area. Moreover, at the time of her transfer in 1972, there were no Systems Analyst openings, and when openings later occurred in 1973 and 1974, "plaintiff had embarked upon a new career track in the publications area." The court also credited the testimony of appellee's president, one Grant, and found that "[the Foundation's] best interests would be served by continuing [Sweeney] in work that has turned out to be eminently satisfactory and rewarding to her *as well as to defendant.* This exercise of traditional management prerogatives constitutes a legitimate and non-discriminatory basis for defendant's actions." (emphasis added). Finally, the court held that Sweeney failed to carry her burden of demonstrating by a

---

**5.** By order filed on March 17, 1980, a motion to dismiss the claims under 42 U.S.C. §§ 1981, 1983, 1985 and New York Executive Law § 290 et seq., was granted on the ground that said claims were time barred.

**6.** Although Sweeney's complaint sought an injunction directing the Foundation to reassign

her to a Systems Analyst position, she apparently does not continue to seek such relief since: (A) she testified that as of 1978, she was no longer qualified for a Systems Analyst position; and (B) at oral argument, when her attorney asked what relief she was seeking, he responded that she was seeking monetary relief.

preponderance of the evidence that she was the victim of sex discrimination.

## II. *Proof of a Title VII Case*

■ The central focus of a court confronted with a Title VII sex discrimination case is whether the employer is treating "some people less favorably than others because of their . . . sex." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n.. 15, 52 L.Ed.2d 396 (1977). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth a three-step allocation of evidentiary burdens of the parties in a Title VII case where discriminatory treatment is alleged. The Court stated:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination.
>
> . . . .
>
> The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.
>
> . . . .
>
> [R]espondent must [then] be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext.

*Id.* at 802–04, 93 S.Ct. at 1824–25. In *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Court noted that the establishment of a prima facie case creates a rebuttable presumption that the employer has unlawfully discriminated; once the employer offers evidence of a legitimate reason for the rejection of the complainant, the presumption "is rebutted" and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 and n. 10, 101 S.Ct. at 1095 and n. 10. The Court has emphasized that at all times, the Title VII complainant retains the ultimate burden of persuading the trier of fact that the employer intentionally and unlawfully discriminated against the complainant. The "division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." *Burdine,* 450

U.S. at 253, 101 S.Ct. at 1093–94. Several other Supreme Court decisions since *McDonnell Douglas* have further clarified the nature of the parties' burdens as set forth above. In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), the Court noted that "[t]he method suggested in *McDonnell Douglas* for pursuing [the inquiry of whether the employer is discriminating in violation of Title VII] was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination."

### A. *Plaintiff's Prima Facie Case*

■ Consistent with the policy set forth in *Furnco,* the Court recently provided further guidance to lower courts in *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In *Aikens,* the Court reiterated that the complainant's initial burden of establishing a prima facie case is not onerous, and reviewing courts should not be preoccupied with whether a prima facie case has been established. *See also Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94. Rather, the *Aikens* Court stated:

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Id.* —— U.S. at ——, 103 S.Ct. at 1482 (citation omitted).

Here, the district court found that a prima facie case had been proven. The court then properly proceeded to determine "whether the rejection was discriminatory within the meaning of Title VII." *Id.* Although under *Aikens,* we need not linger long over the question of whether Sweeney in fact established a prima facie case before we turn our attention to "the ultimate question of discrimination *vel non*," *id.,* we

note, that the district court properly found that Sweeney had established a prima facie case. She offered evidence (1) that she belongs to a protected class—she sues as a female; (2) that she applied for, and was qualified for, a position for which her employer was seeking applicants—namely the Systems Analyst openings in 1973 and 1974; (3) that despite her qualification, she was rejected; and (4) that, after her rejection, the positions remained open and thereafter were filled by males. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

B. *Defendant's Burden: A Legitimate, Nondiscriminatory Reason for its Acts*

■ In *Burdine,* the Court clarified the nature of the defendant's burden under *McDonnell Douglas.* The Court emphasized that the defendant's burden is one of production, not persuasion. This burden can be met if the evidence presented by the defendant, setting forth the reasons for rejection of the plaintiff, "raises a genuine issue of fact as to whether [defendant] discriminated." 450 U.S. at 254, 101 S.Ct. at 1094. Under *Burdine,* the reasons set forth by the defendant must be "articulated with some specificity," *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 5 (1st Cir.1979), in order to provide the plaintiff with "a full and fair opportunity to demonstrate pretext"—i.e., that the non-discriminatory reason advanced by the defendant was not the true reason for the rejection. *Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95.

■ Moreover, the evidence produced by the employer should be objective and competent. Subjective evaluations are not adequate by themselves because they may mask prohibited prejudice. *Knight v. Nassau County Civil Service Commission,* 649 F.2d 157, 161 (2d Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981); *see Crawford v. Western Electric Co.,* 614 F.2d 1300, 1313–17 (5th Cir.1980); *United States v. N.L. Industries, Inc.,* 479 F.2d 354, 372 (8th Cir.1973). Objective competent evidence may consist of the required qualifications for the subject position measured

against plaintiff's qualifications including background in the relevant field. *Knight,* 649 F.2d at 161. Such criteria do not become subjective simply because they are evaluated by plaintiff's superiors. *Id.*

Here, appellant erroneously contends that the district court failed to apply the standards required of the defendant to meet its burden, i.e., that the evidence be specific, objective and competent. She alleges that the district court merely announced that the appellee "carried its burden." With regard to specificity and objectiveness, appellant alleges that the only reasons given on the record for the decision not to promote her were that "defendant's best interests would be served by continuing plaintiff in work that has turned out to be eminently satisfactory and rewarding to her as well as defendant." She contends that it was never stated how or why it is in the Foundation's best interest not to promote her to Systems Analyst. Thus, appellant asserts that she was not afforded a "fair opportunity to prove that prejudice was actually the motivating factor behind the negative decisions." With regard to competence, she contends that the district court erred in citing her admitted success in the publications area as evidence in the appellee's favor, and she contends that "such speculation is not 'an articulation . . . admitted into evidence,'" citing *Burdine,* 450 U.S. at 255 n. 9, 101 S.Ct. at 1094 n. 9. Appellant concludes that no legally sufficient reasons were offered for the Foundation's actions. This is clearly not so, as shall be seen hereinbelow.

■ We note that under Fed.R.Civ.P. 52(a), a reviewing court must accord great deference to the district court on matters such as assessments of credibility of witnesses and the resolution of conflicting permissible inferences. *Page v. Bolger,* 645 F.2d 227, 231 (4th Cir.) (en banc), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981).[7] Here, the district court held that defendant had met its bur-

---

7. Rule 52(a) states in part:
   Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

den of production. In reaching this conclusion, the court made the following observations: (A) in re-transferring Sweeney to the Personnel Assistant position, the Foundation considered Sweeney's background, noting her extensive experience in the affirmative action area as compared with her limited experience in the systems area; (B) at the time of the transfer in 1972, there were no openings for Systems Analysts; (C) when openings subsequently occurred in 1973 and 1974, "plaintiff had embarked upon a new career track in the publications area;" (D) it was Grant's opinion that defendant's best interests would be served by continuing Sweeney in the publications area. The district court concluded, in light of these underlying facts, that the Foundation's "exercise of traditional management prerogatives constitutes a legitimate and non-discriminatory basis for defendant's actions." [8]

We conclude that the district judge did not base his decision solely on subjective evaluations lacking in specificity. Rather, sufficient evidence of objective underlying facts, such as the organization's needs at the relevant times and Sweeney's background and experience, was received and considered, and supported the decision of the court below. There was ample evidence that the decision to transfer appellant to the Administrative Division in 1972 was based on the organization's needs at the time for an affirmative action officer with a background in that area as well as some knowledge of systems analysis; that as of 1973, Sweeney was receiving substantial assignments in the publications area and continued to develop her skills and to succeed in that area; that when openings occurred for Systems Analysts in 1973 and 1974, there was support for the conclusion that it was a sound personnel judgment for the Foundation to fill those openings with persons other than appellant, given the time and resources that had, by then, been devoted to developing her skills in publications; and, further, that, at worst, the transfer of Sweeney in 1972 was the result of a rivalry between two division heads.[9] The district judge's assessment of this evidence led him to conclude that the appellee had come forward with "a legitimate and non-discriminatory basis for [its] actions." We cannot say that this finding constituted clear error, especially since the defendant's burden is one of production and not persuasion.

C. *Plaintiff's Ultimate Burden: Employer's Proffered Reason is Mere Pretext*

■ Once the employer has met its burden, the plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. This burden merges with the ultimate burden of persuasion. *Id.* However, this ultimate burden is in effect narrowed once the employer has set forth its proffered reasons for its actions, and the plaintiff may focus upon "the specific reasons advanced by the employer." *Wright v. National Archives and Records Service,* 609 F.2d 702, 716 (4th Cir.1979) (en banc). The plaintiff can meet this ultimate burden "either directly by persuading the

---

**8.** In support of this proposition, the court cited *United Steelworkers of America v. Weber,* 443 U.S. 193, 207, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 480 (1979).

**9.** The trial record reflects a rivalry between Division Heads Dillon and Widmer. In Sweeney's submission to the EEOC, which was admitted in evidence at trial, she states her belief that she was treated unfairly because she was caught in "crossfire" between Dillon and Widmer. The trial testimony of Dillon and Widmer supports this conclusion. Dillon testified that Sweeney performed her "System Analyst" duties quite competently and had strong potential as a Systems Analyst; that Widmer was "very interested in seeing that [Dillon] didn't keep Nancy as an employee" and wanted Sweeney to work in the Administrative Division; that Widmer and Grant felt that it was in the Foundation's and Sweeney's best interest to be transferred to the Administrative Division; and that he believed that Widmer "did not want any other female" to challenge her own "strong position in the research foundation." Widmer testified that at the time Sweeney was re-transferred to the Administrative Division, Personnel (within the Administrative Division) was "going forward with additional computerization" and could put Sweeney's skills to good use; and that, contrary to Dillon's testimony, she (Widmer) has worked towards the advancement of women within the Foundation.

court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

Here, the district court held that Sweeney failed to satisfy her ultimate burden of persuasion in that she "failed to prove by a preponderance of the evidence that a discriminatory reason more likely motivated the defendant or that the defendant's proffered explanation for its failure to offer her a systems analyst position is unworthy of belief." Appellant makes no argument on this appeal that the district court abused its discretion in ultimately resolving this issue as it did. Rather, appellant's arguments are confined to the issue of whether the employer herein met its burden of articulating with some specificity a non-discriminatory reason for rejecting plaintiff.

We reiterate that under Rule 52(a), Fed.R.Civ.P., findings of fact may not be set aside unless clearly erroneous. The clearly erroneous standard applies to the ultimate finding of discrimination *vel non Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 1788–89, 72 L.Ed.2d 66 (1982).

Our review of the record reveals that the only evidence offered by Sweeney indicating a discriminatory motive was statistical —i.e., that only males had been hired as Systems Analysts during the relevant years herein and that women tended to be in lower paying positions.[10] However, statistical evidence alone does not necessarily imply sex discrimination. *See Thompson v. Leland Police Department,* 633 F.2d 1111, 1114 (5th Cir.1980). Widmer testified that no women outside of the organization applied for the positions in the period from July, 1968 to December, 1972. It appears from the record that rather than being the victim of sex discrimination, Sweeney was caught in the "crossfire" of an intra-organizational dispute. While it is unfortunate for Sweeney that this occurred, the acts here at issue were not violative of Title VII.[11]

We conclude that the record supports the conclusion of the district court that Sweeney failed to carry her ultimate burden of persuasion. For the reasons set forth above, we affirm the decision of the district court. No costs.

---

10. The EEOC found, in its Determination dated February 17, 1977, that women were, as of that date, still concentrated in the lower-paying jobs.

11. We emphasize that an employer must have freedom to run its organization efficiently. While the employee's wishes should be taken into account in the employer's decision-making, they do not govern. We are aware of the paternalistic tone expressed by the Foundation herein that it would keep Sweeney in the Administrative Division because that was "in her best interest." However, this fact, which is not discriminatory by itself, does not change the result.