Lewis A. VIRGO, Plaintiff,

v.

**LOCAL UNION 580, Defendant.**

**No. 84 Civ. 1592(EW).**

United States District Court, S.D. New York.

March 17, 1986.

See also, D.C., 107 F.R.D. 84.

---

Kipp Elliott Watson, New York City, for plaintiff.

Colleran, O'Hara & Mills, P.C., Mineola, N.Y., for defendant; John F. Mills, Vincent F. O'Hara, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

### FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiff Lewis Virgo commenced this action alleging that defendant Local Union 580 of the International Association of Bridge, Structural and Ornamental Iron Workers ("Local 580" or the "Union") discriminated against him on the basis of his race in its admissions and referral practices in violation of Title VII of the Civil Rights Act of 1964.[1] Upon a review of the testimony of the witnesses during the three-day trial and an appraisal of their credibility, the exhibits introduced into evidence, and the stipulated facts, the Court makes the following findings of fact and conclusions of law.

[1]. 42 U.S.C. §§ 2000e to 2000e–17.

Plaintiff is a black man of Jamaican origin who entered this country in 1967 and who has lived here since as a resident alien. Virgo was first employed within the jurisdiction of Local 580 in 1971, when he worked as an architectural and ornamental iron worker at General Bronze. On August 21, 1972, Virgo filed an application for membership in Local 580. He took and passed the defendant's journeyman's examination on February 14, 1973, but was not admitted to the Union's membership until February 28, 1980.

During the years 1971 through 1974, the Union referred plaintiff, as a permit man, to various jobs as an iron worker.[2] In 1976, plaintiff was employed as a full-time shipfitter by Seatrain Shipbuilding, where he worked until he sustained a permanent disabling injury in January or February 1978.

In November and December 1976, Virgo filed discrimination charges against the Union with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights. After five days of hearings in 1980 and 1981, an Administrative Law Judge dismissed Virgo's complaint on the ground that the State Division of Human Rights' jurisdiction had been preempted by a federal consent judgment entered in *EEOC v. Local 580.*[3] On August 24, 1982, Virgo's complaint was dismissed by a commissioner of the State Division of Human Rights upon findings of fact, a decision and an opinion.[4] Upon appellate review, the commissioner's decision was affirmed by the chairman of the Division on December 30, 1983. The

EEOC issued plaintiff a notice of right to sue on February 10, 1984.

### DISPARATE TREATMENT

Plaintiff asserts two separate claims for recovery: disparate treatment and disparate impact. We first consider the disparate treatment claim. He contends that the seven-year delay in his admission to the Union from the time he passed the journeyman's examination in 1973 to 1980 was the result of defendant's discriminatory admissions practices. Virgo also contends that Local 580 discriminated against him on the basis of his race with respect to its job referral practices.

In a Title VII case alleging disparate treatment the central issue is whether there has been intentional discrimination against the plaintiff.[5] " 'Proof of discriminatory motive is critical.' "[6] The plaintiff has the burden of proving by a fair preponderance of the evidence a prima facie case of discrimination. To establish a prima facie case, Virgo must show: 1) he belongs to a racial minority; 2) he applied and was qualified for admission to the union and/or for referrals and the union was admitting applicants or referring persons; 3) despite his qualifications he was not admitted or referred for jobs; and 4) after his rejection, defendant was still admitting or referring applicants from person's of plaintiff's qualifications.[7]

The four *McDonnell Douglas* requirements, however, do not represent the exclusive method of showing disparate treatment under Title VII.... "The im-

---

**2.** Virgo also worked during this period as a structural iron worker in the jurisdiction of Iron Workers Local 361, a rigger in the jurisdiction of Riggers Local 471 and a boilermaker in the jurisdiction of Boilermakers Local 5.

**3.** 71 Civ. 2877 (HFW).

**4.** *Lewis A. Virgo v. Iron Workers Union Local 580,* Raymond Cody, No. E–NR–45471–76E.

**5.** *See Martin v. Citibank,* N.A., 762 F.2d 212, 217 (2d Cir.1985); *see also United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).

**6.** *Zahorik v. Cornell University,* 729 F.2d 85, 91 (2d Cir.1984) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977)).

**7.** *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981); *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

portance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act."[8]

It is undisputed that Virgo is a member of a racial minority, that he applied for admission to Local 580 and that after passing the journeyman's examination in February 1973, he was qualified to become a member of the Union. Nevertheless, the Court finds that Virgo failed to establish a prima facie case of disparate treatment. The *only* evidence offered by plaintiff to sustain his allegation that his membership was not acted upon or delayed because of his race was his own testimony, which largely was based on double hearsay and unreliable recollections of past events and which frequently was inconsistent and contradictory with respect to material matters.[9]

Virgo testified that he was told by others that the defendant was discriminating against him[10] and that he "heard" and was "told" that five to seven white men and one black man who passed the journeyman's examination when he did had been admitted.[11] He testified that about four of those

men flashed what appeared to be union books at him to prove they had been admitted but he acknowledged that he did not know if these men were misleading him.[12] Virgo could not remember the names of any of the applicants allegedly admitted after taking the test with him,[13] offered no documentary proof to support his allegations and called no witnesses with firsthand knowledge of the Union's admissions practices during this period.

Plaintiff relies heavily on the stipulated fact that in 1973 and 1974, 86 persons were admitted to the Union. However, plaintiff failed to establish when any of these people took the journeyman's examination. Robert A. Kennedy, counsel for Local 580 in its negotiations with the EEOC and the United States Attorney's office during the pendency of a proceeding hereafter referred to, testified that none of the people who took the journeyman's examination between 1971 and 1975 were admitted during that period.[14] This credible evidence was not challenged in any respect. Thus, plaintiff failed to establish that defendant was admitting persons of his qualifications during the period in question or that he was treated differently than any other person. The evidence does not give rise to an inference that the delay in Virgo's admission was based on his race.

In a Title VII case alleging disparate treatment, if plaintiff establishes a prima

---

**8.** *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1014 (2d Cir.1980) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981); *see also Sweeney v. Research Foundation of the State University of New York,* 711 F.2d 1179, 1184 (2d Cir.1983) (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)).

**9.** James Haughton, director of Fight Back, testified regarding his efforts to assist a black welder gain admission to Local 580 last year, five years after plaintiff became a member. While Haughton made conclusory and unsubstantiated statements concerning defendant's admissions practices during the 1960s and 1970s, he offered no evidence to support his claims. In fact, when asked by plaintiff's counsel how many persons he had encountered who had difficulty

obtaining union cards, Haughton replied "Not many." *See* Tr. at 264.

**10.** *See* Testimony of Lewis Virgo, tr. at 158–65.

**11.** *Id.* at 21, 28, 149–50, 234.

**12.** *Id.* at 199–200, 234–44.

**13.** *Id.* at 249–50.

**14.** There are five methods of becoming a member of Local 580: passing the journeyman's examination, completing the apprenticeship program, completing the trainee program, transferring from another union, or organization of a shop by the Union. *See* Testimony of Robert A. Kennedy, tr. at 320–21. Kennedy testified that a few people who passed the journeyman's examination may have become members by completing the apprenticeship program. Id. at 301.

facie case, the burden shifts to the defendant " 'to articulate some legitimate, nondiscriminatory reason' " for its failure to admit the plaintiff.[15] The burden of persuasion remains on the plaintiff at all times; only the burden of production shifts to the defendant if plaintiff establishes a prima facie case.[16] "Because it is incumbent upon the [plaintiff] to prove that the nondiscriminatory reason was pretextual, the [defendant] need not *prove* the absence of discriminatory motive or that the [failure to admit or refer] was motivated by a legitimate reason." [17]

■ Even if plaintiff had succeeded in establishing a prima facie case of disparate treatment, defendant met its burden of setting forth a nondiscriminatory reason for the delay in Virgo's admission to Local 580. On June 29, 1971, the United States filed a complaint in the United States District Court for the Southern District of New York charging various unions, including Local 580, with discrimination in violation of Title VII. During negotiations with the United States Attorney's office and the EEOC to devise a plan for facilitating minority membership in the Union, defendant suspended admission of *all* applicants who passed the journeyman's examination in 1971 through 1975. Applicants could become new members of Local 580 by completing the apprenticeship program, transferring from another local, or completing the trainee program—a program restricted to minorities only. After a consent judgment was entered in July 1978,[18] those persons who had passed the journeyman's examination during the four-year period and who had responded to a joint mailing conducted by the United States Attorney's office, were invited to join the Union. Virgo's admission was delayed from 1978 to 1980 because he failed to respond to the first mailing.[19] Although Virgo testified that he provided the United States Post Office and the Union with his changes of address, apparently he never received the initial mailing. When he brought the problem to the attention of Local 580 officials in September 1978, he was referred to the United States Attorney's office, which had been responsible for the mailing, and was given a letter stating that the Union had no objections to admitting Virgo immediately. Thereafter, Virgo met with Dennison Young of the United States Attorney's office. In 1979, he received and responded to a subsequent joint mailing, paving the way for his admission in February 1980.

Once the defendant articulated a legitimate, nondiscriminatory reason for the delay in Virgo's admission, plaintiff had the burden of proving that the Union's articulated reasons were not its true reasons, but were a pretext for discrimination.[20] "[Plaintiff] may satisfy this ultimate burden 'either directly by persuading the court that a discriminatory reason more likely motivated the [union] or indirectly by showing that the [union's] proffered explanation is unworthy of credence.' " [21] Plaintiff offered no evidence, either during his direct case or on rebuttal, to prove that defend-

**15.** *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

**16.** *See Zahorik v. Cornell University,* 729 F.2d 85, 92 (2d Cir.1984); *Sweeney v. Research Foundation of the State University of New York,* 711 F.2d 1179, 1184 (2d Cir.1983).

**17.** *Meiri v. Dacon,* 759 F.2d 989, 996 n. 11 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

**18.** Defendant's Exh. E.

**19.** Under the terms of the consent judgment, those persons who responded to the initial mailing were to be admitted before persons responding to subsequent mailings were invited to join.

**20.** *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Martin v. Citibank, N.A.,* 762 F.2d 212, 217 (2d Cir.1985).

**21.** *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)), *cert. denied,* — U.S. —, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). *See also United States Postal Board of Governors v. Aiken,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

ant's decision to delay his admission was based on his race. Indeed, the evidence points to the contrary. In sum, the Court finds that Virgo failed to establish that he was the victim of intentional race discrimination.

■ No more need be said about Virgo's claim that he was discriminated against in job referrals during the period 1974 through 1976 than that plaintiff introduced no evidence at trial to sustain such a claim. The evidence shows that Local 580 referred Virgo to various jobs from 1971 to 1974. Virgo acknowledged that he was aware that the construction industry in New York State experienced a period of reduced employment because of economic conditions in 1974 and 1975.[22] While Union members were given preferences over permit workers in job referrals, there is no evidence, other than Virgo's unsupported conclusory allegations, that Virgo was treated differently than any other permit workers or that job referrals were based on race.

## DISPARATE IMPACT

■ Disparate impact claims involve "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."[23] To establish a prima facie case, plaintiff must show that the union's policy selects applicants for admission in a racial pattern significantly different from that of the pool of applicants.[24]

While plaintiff need not prove discriminatory motive,[25] he is required to prove a causal connection between the challenged selection criteria and the disparate impact itself.[26] Discriminatory impact is frequently evidenced by statistics demonstrating that the union's methods result in admission of a disproportionately larger share of whites than of blacks out of a pool of qualified candidates.[27]

Plaintiff failed to offer evidence supporting his claim that the Union's decision to suspend admission of all who passed the journeyman's test in 1971 through 1975 had a disparate impact on blacks. While the parties stipulated that 86 persons, three of whom were black or Hispanic, were admitted to Local 580 in 1973 and 1974, this is not sufficient, standing alone, to make out a prima facie case of disparate impact.

Plaintiff introduced no evidence that these 86 people were the only persons admitted, either by virtue of having passed the journeyman's examination or by any other method of admission. In fact, during this same period, defendant instituted a trainee program for minority group members over the age of 30 seeking to join the Union. Defendant introduced evidence to show that from 1971 to 1978, minority membership in Local 580 increased from 39 members to 107, while total membership increased only slightly.[28]

Plaintiff offered no proof with respect to how many people took the exam after 1971 or how many people taking or passing the exam after 1971 were members of minority groups. The evidence before the Court shows only one minority group member who took and passed the test during that period and whose admission was delayed—Lewis Virgo. No evidence was offered comparing the number of blacks whose ad-

22. *See* Testimony of Lewis Virgo, tr. at 26, 141.

23. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977); *Zahorik v. Cornell University*, 729 F.2d 85, 95 (2d Cir. 1984); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1014 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981).

24. *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975).

25. *See Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1014 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981).

26. *See Zahorik v. Cornell University*, 729 F.2d 85, 95 (2d Cir.1984).

27. *See Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1015 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981).

28. *See* Testimony of Robert A. Kennedy, tr. at 298.

mission was delayed by defendant's decision to the number of blacks or whites who were admitted or who took the test. Evidence of a disparate impact on blacks as a group is wholly lacking.

Moreover, plaintiff failed to show defendant's total membership from year to year, the appropriate geographical jurisdiction of the Union,[29] or the percentage of minorities in the Union's jurisdiction.[30] Plaintiff offered the testimony of a mathematics teacher, who the Court finds was not qualified to give expert testimony on statistics,[31] for the proposition that the probability that only three minority members would be admitted to the Union was extremely small.[32] Having failed to establish that only three minority group members were admitted to the Union or the percentage of minorities in the Union's jurisdiction, the testimony of plaintiff's witness is of no value.

Plaintiff's claim of disparate impact was not supported by relevant evidence. Thus, plaintiff fails to prevail on either his disparate treatment or his disparate impact claims.

### DAMAGES

■ Finally, even if Virgo had carried his burden of proof with respect to any of his claims, he failed to introduce evidence of his damages.[33] Plaintiff seeks an award of back pay and benefits and prejudgment interest. Under 42 U.S.C. § 2000e-5(g), back pay liability shall not accrue more than two years prior to the filing of a complaint with the EEOC. Because plaintiff filed his EEOC complaint on November 10, 1976, back pay liability, if any, accrued November 10, 1974. Plaintiff acknowledged that because he was permanently disabled in January or February 1978, defendant's back pay liability terminated at the time of plaintiff's injury.[34] Thus, his claim for damages is limited to the period from November 10, 1974 to January or February 1978.

The only evidence introduced by plaintiff was his federal and state tax returns for 1973 and 1974,[35] some W-2 wage and tax statements for 1972 through 1978,[36] and a computer printout obtained from the Internal Revenue Service indicating plaintiff's adjusted gross income for 1971, 1972, and 1975 through 1978.[37] Ignoring plaintiff's failure to produce any evidence of his gross income for 1975 through 1978, the evidence introduced at trial falls far short of that required to establish plaintiff's damages. Evidence of Virgo's earnings as a Local 580 permit man and in other jobs might be probative of the extent to which plaintiff mitigated his damages, but it does not provide a basis for determining the extent of his damages. Virgo failed to introduce evi-

---

**29.** "[W]here a significant number of union members come from outside the union's geographic jurisdiction, the court must widen its sights; the appropriate reference area then should be that region from which the union draws its members." *EEOC v. Local 14*, 553 F.2d 251, 254 (2d Cir.1977). *See also Hazelwood School Dist. v. United States*, 433 U.S. 299, 311 n. 17, 97 S.Ct. 2736, 2743 n. 17, 53 L.Ed.2d 768 (1977); *EEOC v. Local 638*, 565 F.2d 31, 36 & n. 7 (2d Cir.1977). Plaintiff offered no evidence on this question.

**30.** Plaintiff relies on the goal of 24% minority membership in Local 580 contained in the 1978 consent decree between the Union and the EEOC as evidence of the percentage of minorities in the Union's jurisdiction. Plaintiff ignores the fact that the 24% figure was a negotiated compromise, *see* Testimony of Robert A. Kennedy, tr. at 308–12, 326–28, and that it was a goal to be achieved over a five-year period. Plaintiff offered no proof of the actual percentage of minorities in the Union's jurisdiction during

1971 to 1978. The Court notes, however, that even if the figure is accurate, plaintiff's disparate impact claim fails for the reasons discussed in text.

**31.** *See* Tr. at 336–42.

**32.** *See* Testimony of Marvin Shumowitz, tr. at 345–52.

**33.** At the outset of the trial, the Court stated that the trial would not be bifurcated as to liability and damages and that plaintiff should introduce all of his evidence. *See* Tr. at 36.

**34.** *See* Tr. at 355–56.

**35.** Plaintiff's Exh. 4.

**36.** Plaintiff's Exh. 5.

**37.** Plaintiff's Exh. 6.

dence of iron workers' average wages or benefits for the period November 10, 1974 through early 1978, making it impossible to compare Virgo's actual earnings with what he might have earned had he not been the victim of alleged racial discrimination. Similarly, while defendant's collective bargaining agreement states that the average number of hours worked by Union members in 1976 was 750 hours,[38] no evidence was offered with respect to any other year.

Even if damages could be calculated, the Court is required by the statute to reduce the back pay award by "[i]nterim earnings or amounts earnable with reasonable diligence."[39] Although plaintiff testified about his efforts to obtain work through the Union in the years in question, no evidence was offered regarding what alternative avenues of employment were explored by plaintiff, other than his actual employment by Traynor & Hansen and Seatrain Shipbuilding.

**38.** Defendant's Exh. E, at 12.

**39.** 42 U.S.C. § 2000e–5(g).

**40.** *EEOC v. Enterprise Ass'n Steamfitters,* 542 F.2d 579, 587 (2d Cir.1976) (quoting *Hairston v.*

Recognizing that " 'uncertainties in determining what an employee would have earned but for the discrimination, should be resolved against the discriminating [party],' "[40] the Court finds that plaintiff has not sustained his burden of proving damages.

## CONCLUSION

Plaintiff failed to sustain his burden of proof as to his claims by a fair preponderance of the evidence. Accordingly, judgment may be entered for defendant dismissing the complaint.

So ordered.

*McLean Trucking Co.,* 520 F.2d 226, 233 (4th Cir.1975)), *cert. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977).