Mary MORTON, Plaintiff,

v.

**CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, a public entity created pursuant to and under the laws of the State of New York, Frances Vazquez, formerly Superintendent of the Bronx High Schools, Division of High Schools/City School District of the City of New York, Jack Valerio, Principal of James Monroe High School, Victor Herbert, Superintendent of the Bronx High Schools, Defendants.**

No. 88 Civ. 1249 (RPP).

United States District Court,
S.D. New York.

July 13, 1990.

James I. Meyerson, New York City, for plaintiff.

Victor A. Kovner, Corp. Counsel, Marcia Goffin, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendants move and plaintiffs cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff is an African American woman who was 62 years of age when this lawsuit was filed on February 23, 1988. She brings this suit against defendants City School District of the City of New York and three of its employees, seeking monetary damages and equitable relief based on allegations that defendants discriminatorily decided not to

hire plaintiff to be an Assistant Principal at James Monroe High School.

## BACKGROUND

In 1964, plaintiff was appointed to a teaching position at James Monroe High School, a public school in Bronx, New York. In 1983, the Assistant Principal (AP) retired and plaintiff assumed the AP's duties, despite the fact that she did not satisfy the educational and licensing requirements for the AP position. On February 10, 1987, the New York City Public Schools Division of Personnel distributed a notice that there was an opening at James Monroe High School for the position of "Assistant Principal Supervision Stenography and Typewriting." Ex. 5 to Goffin Aff. (August 7, 1989).[1] On February 23, 1987, plaintiff submitted an application for the position. Ex. 6 to Goffin Aff. On March 6, 1987, Ms. Susan Friedman, a white female of a younger age than plaintiff, submitted the only other application for the job.

Plaintiff had become licensed to be an AP by early 1987 and on March 27, 1987, the Division of High Schools officially appointed plaintiff "interim acting" "Assistant Principal–Sten/Type." Ex. 3 to Goffin Aff. On April 29, 1987 the Executive Director of High Schools granted the Superintendent of the Bronx High Schools, defendant Frances Vazquez ("Vazquez"), permission to begin the interviewing process for hiring a permanent AP. Pursuant to Special Circular No. 30–R issued by the Chancellor of the Board of Education, see Ex. 34, 35 to Goffin Aff., the two candidates were interviewed by a five member committee consisting of an assistant to Vazquez, two Board of Education principals from different boroughs, a parent and a retired employee of the Division of Personnel.

After interviewing plaintiff on June 19, 1987, the panel completed "Summary of Interview Data" sheets with the following conclusions under the headings

---

1. Hereinafter, unless otherwise specified, references to Goffin Aff. are to her affidavit of August 7, 1987.

"strengths," "weaknesses" and "comments":

I. Strengths: "She has experience as the Interim Acting AP for 4 years."

"Reasonable/Well Spoken."

"Knowledgeable re 'U' rating."

"Experienced/Knows School."

"Civic orgs.—on the job experience."

"Strong portfolio."

"Job experience is inevitable but Mrs. Morton could have told more of her on the job experiences."

II. Weaknesses: "Role of work unclear in so far as knowing her responsibilities."

"Ans[wers] poorly organized—need prodding."

"Didn't respond to problem posed."

"Her answer lacked specificity."

"She was lackluster."

"Did not demonstrate and/or explain any major contributions she has made to dept. during her tenure as I.A.P."

"Identified problems but did not offer adequate solutions."

"Does not handle challenges well re: cuts in dept. Does not know how to be an advocate to 'sell' her dept."

"Poorly organized answers—no solution."

"Lacked up to date knowledge in technology."

"Presentation was very weak."

"Not too articulate. Good deal of tugging necessary."

III. Comments: "Qualified to be AP."

"This was not the candidate's best effort, but she comes highly recommended."

"Did not quite present herself as an individual who is an educational leader."

Ex. 14 to Goffin Aff.

After interviewing Ms. Friedman on the same day, the same panel submitted a "Summary of Interview Data" divided into the same three categories as follows:

I. Strengths: "Works at [illegible]—taught, asst. prog. [illegible], workshops throughout city—Strong [illegible], knows RAP, strong integrative approach to dept. Trained in new technology."

"Reasonable/Well spoken/Good human relations."

"Knowledgeable about problems/challenges of RAP."

"Aware of new technology."

"Aware of role of AP in cabinet—school-wide responsibilities."

"School experience—valuable."

"Exp. P/C, RAP Coordinator, knowledge RAP, new technology, role of cabinet, [illegible] new curriculum."

"Handled challenges."

"Very good administrative qualities, good in motivation of staff, planning of programming curriculum, good cabinet responsibilities as the assistant to Principal."

"Excellent applicant—knowledgeable [illegible], new technology, integrative approach, correlation of [illegible] studies."

"Fine personality."

II. Weaknesses: "Weak answer on apathetic teacher—needed more depth."

"Shows no foreseen weaknesses."

III. Comments: "Inexperienced."

"Very good candidate."

"She appears to be an excellent candidate for the position and to be able to provide positive leadership."

"Would work well with a principal."

"Alert to current problems in teaching the sect. studies."

Ex. 15 to Goffin Aff.

The panel concluded that Ms. Friedman was a preferable candidate to plaintiff. However, plaintiff was not eliminated from the application process at that point. The panel took into consideration that it was possible that plaintiff had "had a bad day" and recommended that Vazquez conduct a second interview of both candidates to confirm its conclusion. Pl.Ex. O at 50. On June 26, 1987, Vazquez interviewed both candidates and reached the same conclusions. *Id.* at 54. In a letter dated June 28, 1987, Vazquez informed the Executive Director of the Division of High Schools that she approved the recommendation submitted by the interview committee. In July 1987, plaintiff was informed infor-

mally that she had not been selected for the position. A letter dated September 3, 1987, confirmed that plaintiff had not been hired. On September 9, 1987, plaintiff took a leave of absence for medical reasons. Ex. 30 to Goffin Aff. By letter dated, September 21, 1987, Ms. Friedman was informed that she had been selected for the AP position.

Subsequently, complaints by plaintiff prompted investigations, by the Office of Equal Opportunity for the New York City Board of Education and the Office of the Executive Director of High Schools, of the process by which defendants selected Ms. Friedman and rejected plaintiff. Those investigations resulted in conclusions by said offices that the decision not to hire plaintiff was in accordance with standard procedures and not a result of discrimination. Ex. 23, 25, 28 to Goffin Aff. As of March 28, 1988, plaintiff retired. Ex. 32 to Goffin Aff.

## DISCUSSION

Plaintiff claims in her motion papers that the decision not to hire her violated Title VII, as well as 42 U.S.C. §§ 1981, 1983, the due process clause and the equal protection clause. She alleges that discrimination based on her race and age are the basis for defendants' decision. To grant a motion for summary judgment a court must find that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law because, after sufficient time for discovery, the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### I. Title VII.

The framework for establishing a Title VII violation is: plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; defendants then can rebut the inference of discrimination by presenting evidence that the plaintiff was rejected, or the other applicant was chosen, for a legit-

imate, nondiscriminatory reason; and then plaintiff has the ultimate burden of persuading the jury that the legitimate reason was only a pretext. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Plaintiff has satisfied her initial burden in this case: she belongs to a protected class; she applied for a position for which the employer was seeking applicants; she had the basic qualifications for the position; she was rejected; the position remained open and was filled by a white. *See Sweeney v. Research Foundation of the State University of New York*, 711 F.2d 1179, 1185 (2d Cir.1983).

■ Defendants satisfy their initial burden of rebuttal as well. The record is clear that Ms. Friedman's performance in the interview process surpassed that of plaintiff. Plaintiff argues that the evaluations cannot constitute legitimate reasons because an interview is not an adequate means for evaluating her candidacy. Plaintiff attempts to support this argument with an expert affidavit explaining how review of plaintiff's past experiences as AP would be much more revealing than an interview process.

Plaintiff's argument is without merit. Interviews are a rational and accepted means of assessing an applicant's qualifications. More importantly, the evaluations of plaintiff and Ms. Friedman were not based exclusively on the ability to perform well at an interview. The members of the panel and Vazquez were in possession of both candidates' resumes and inquiries were made concerning the candidates' past experiences and agenda for the position if hired. The selection process involved not only the style and form of the candidates' presentations, but also the substance. Pl.Ex. O at 55. Vazquez's letter approving the panel's decision describes Ms. Friedman's experience in past employment, her range of knowledge and skills, and only mentions the completeness of her presentation in one sentence. Ex. 18 to Goffin Aff.

As to plaintiff, Vazquez recognizes her experience as AP, but concludes, "It appears that the department could use new dynamic leadership." *Id.*[2]

The remaining issue is whether there are any issues of fact material to the question of whether defendants' legitimate reasons are a pretext for discrimination. Plaintiff can establish a pretext " 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Summary judgment for defendants is inappropriate if plaintiff can "produce evidence from which the trier of fact reasonably could draw an inference of discrimination." *Sorlucco v. New York City Police Dept.*, 888 F.2d 4, 7 (2d Cir.1989); *Smith v. American Express Co.*, 853 F.2d 151, 154–55 (2d Cir.1988) (granting summary judgment for defendant in Title VII action, despite plaintiff's establishment of a prima facie case); *Meiri, supra* (same). Summary judgment for plaintiff is appropriate if plaintiff can prove that the reason is pretextual. *Sorlucco*, 888 F.2d at 7. Here plaintiff presents no evidence that raises a genuine issue of fact material to whether the legitimate reason was only a pretext.

Plaintiff contends that an issue of fact as to the validity of the panel's assessment of her capabilities is created by comments on her performance as acting AP by Monroe High School principal, defendant Jack Valerio ("Valerio"). The statement upon which plaintiff relies is taken from Valerio's deposition:

> Mary Morton performed satisfactorily in her job, right up to and including the last day of service, and there is no feeling on my part, even in retrospect, that she should not have been allowed to continue in that position, other than that she did not succeed in the competitive examination process of the position.

Pl.Ex. N at 96. There is no conflict between Valerio's sentiments and the evaluation by the interviewing panel. The panel never doubted that plaintiff had "performed satisfactorily" in the AP position, but concluded that Ms. Friedman was more dynamic and better suited for the opening. Ex. 18 to Goffin Aff. In addition, Valerio stated in his deposition several weaknesses of plaintiff's performance as AP:

> [S]he did not serve as a strong enough vocal proponent for special programs within her department.... I don't think Mary has the high level of intellect that is generally—that I generally associate with the more successful department assistant principals.
>
> * . * . * * * *
>
> [S]he has difficulty getting along with certain individuals. In my opinion, a department assistant principal must find a way to get along with every one of his or her subordinates, because supervision in that degree can only be achieved when relationships are strong, and Mary clearly has poor relationships with a few individuals.
>
> * * * ⸲ * *
>
> Mary tended to be a bit too easily swayed from one position to another. She does not seem to have the strength of conviction, but again, I believe that may be related to the intellect issue....

Ex. 4 to Goffin Aff. (January 10, 1990).

Plaintiff also makes the conclusory assertion that she had qualifications superior to those of Ms. Friedman. A review of the credentials of the two candidates reveals that both had similar certifications; both had engaged in post-graduate studies and attained masters degrees; and both had employment experience in teaching and administrative positions directly related to the

---

**2.** Plaintiff uses the same argument as the basis for her claim that the hiring process resulted in an arbitrary and capricious decision in violation of substantive due process. For the reasons stated above, the Court finds the decisionmaking process to have been a rational means of satisfying the government interest in hiring the best qualified candidate. Summary judgment is granted to defendants on the substantive due process claim.

duties of the AP position. Ex. 6, 7 to Goffin Aff. The only differences, which are favorable to plaintiff, are that plaintiff had been serving as the AP at James Monroe High School since 1983 and had been employed in the field of education since 1964, while Ms. Friedman had never before worked at James Monroe High School as AP and had her first teaching job in 1969. *Id.* The evidence is that the panel and Vazquez gave those factors weight in the selection process, but found other, nondiscriminatory factors outweighed them. Accordingly, differences in credentials do not raise a genuine issue of fact material to the legitimacy of the determination that Ms. Friedman was a superior candidate.

Plaintiff also relies on the affirmative action policy of the Board of Education as a basis for undermining the legitimate reasons proffered by defendants. The policy's purpose is "to improve the presence of all minorities at all levels of professional and supportive staff." Pl. 3(g) at 4, ¶ 7. However, the policy does not mandate the "use [of] any right formula in evaluating ... information," but merely directs personnel to make "recommendations for changes in respective office staffing patterns" and "to use ... administrative skill to best advantage in making continuous progress in this important area." Pl. 3(g) at 4–5 ¶¶ 8, 9. According to plaintiff, a reasonable juror could conclude that the decision to appoint a white over a qualified minority against the backdrop of this policy had to have been an act of discrimination even if the white had been determined to be better suited for the position.

■ The Court finds plaintiff's theory not to be supported by any evidence relevant to the employment decision. The affirmative action policy did not require the defendants to hire a minority over a white candidate who had been determined to have qualifications which would serve the school better than the minority candidate. Ex. 1, 5 to Goffin Aff. (January 10, 1990); Pl.Ex. C. The affirmative action policy is not evidence that the defendants utilized pretextual reasons for selecting Ms. Friedman.

Plaintiff also speculates that Ms. Friedman was hired only because her husband was an assistant to the Director of the Bureau of Business and Marketing of the City School District of the City of New York. However, she presents no evidence to support a connection between plaintiff's husband or his former boss and the selection process. Mr. Friedman did meet with Valerio in June 1987 while doing business with James Monroe High School; however, plaintiff concedes that Valerio was "not involved in the selection process whatsoever." Meyerson Aff. at 9, ¶ 31; Ex. N at 96. Since there must be some evidence of the alleged connection for an issue of fact to be raised, this contention is summarily dismissed.

Plaintiff also has failed to raise a genuine issue of fact that either the interviewing panel or Vazquez had a bias against her. The only difference in the interviews to which plaintiff can point is based on a statement of Ms. D. Lawson, the parent on the panel, that during the interview with plaintiff it occurred to Ms. Lawson that the panel had asked Ms. Friedman about the computer center but had not yet questioned plaintiff with regard to that topic. Ms. Lawson compensated by asking plaintiff about the computer center and it is possible that eventually the other panel members would have gotten around to inquiring about the computer center. Ms. Lawson's comments do not raise an inference that the interview panel was biased or predisposed towards Ms. Friedman. Plaintiff also has presented no evidence of or rationale for either an animus of Vazquez towards plaintiff or a predisposition of Vazquez towards Ms. Friedman.

The Court is mindful that it is not the usual case for summary judgment to be granted for failure to come forward with sufficient evidence of a pretext. *See Smith v. American Express Co.*, 853 F.2d at 155. However, the Court grants defendants' motion for summary judgment on the Title VII claim in this case because plaintiff has only come forward with speculation and failed to raise a reasonable inference to contradict the evidence that legitimate, nondiscriminatory reasons were the

basis for the decision to hire Ms. Friedman rather than plaintiff.[3]

## II. Other Claims

### A. Section 1981, Section 1983 and Equal Protection

Summary judgment is also granted in favor of defendants on plaintiff's section 1981 claim in light of the identity of the standards under section 1981 and Title VII for determining whether there was intentional discrimination. *See Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989). Similarly, plaintiff has failed to come forward with evidence to establish intentional discrimination sufficient to support an equal protection violation and therefore defendants are granted summary judgment on the Section 1983 and equal protection clause claims.

### B. Procedural Due Process

■ The Court also finds, assuming *arguendo* that plaintiff can establish that a due process interest was at stake in the decision to deny her the position, that she received all the procedures to which she was constitutionally entitled by the due process clause. She received two interviews by a panel representing a variety of perspectives. Several days before the interviews she received notice of the time, place and nature of the interviews. Pl.Ex. D at 90–91, 103–04. Moreover, the City provided her with means for investigating whether the decisionmakers acted based on discriminatory motives. Weighing the government interests, the private interests, and the risks of an erroneous decision, the Court finds that the defendants provided sufficient safeguards to assure the integrity of the hiring process. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

3. The Court also grants defendants summary judgment as to any claim plaintiff may have under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, which plaintiff mentions in its Amended Complaint. As de-

## CONCLUSION

Defendants' motion for summary judgment is granted in its entirety and plaintiff's cross-motion for summary judgment is denied in its entirety. The Clerk of the Court is to enter a Judgment closing this case.

IT IS SO ORDERED.

scribed above, there were legitimate reasons for the selection of a younger candidate rather than plaintiff. Plaintiff has failed to come forward with evidence of why those legitimate reasons were only a pretext for age discrimination.