Alvin PROMISEL, Plaintiff–Appellee,

v.

**FIRST AMERICAN ARTIFICIAL
FLOWERS, INC., Defendant–
Appellant.**

No. 1339, Docket 90–7999.

United States Court of Appeals,
Second Circuit.

Argued April 10, 1991.

Decided Sept. 4, 1991.

John A. Craner, Scotch Plains, N.J. (Craner, Nelson, Satkin & Scheer, of counsel), for defendant-appellant.

James Dolan, Hicksville, N.Y., for plaintiff-appellee.

Before CARDAMONE, MAHONEY and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Alvin Promisel, a sixty-three year old sales manager, sued his employer First Artificial American Flowers ("First American") under federal and state anti-discrimination statutes after First American fired him in December 1987 and replaced him with a younger man. First American now appeals from a judgment of the United States District Court for the Southern District of New York (Gerard L. Goettel, *Judge*) awarding Promisel lost wages and attorneys fees under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–624 and damages for emotional distress" under the New York Human Rights Law, N.Y.Exec. Law §§ 290–301 after a jury trial. First

American argues that the district court improperly exercised pendent jurisdiction over the state law claim for emotional distress, and that it was entitled to have the jury's award for lost wages offset by the unemployment and social security benefits that Promisel received. First American also argues that Promisel failed to prove that its reason for firing him was clearly pretextual. We reject each of First American's arguments, and affirm the judgment below.

## BACKGROUND

Since this appeal comes to us after a jury verdict in plaintiff's favor, we view the facts of the case in the light most favorable to that party. Alvin Promisel began working for First American as a seller on commission in 1964, and eventually rose to the position of sales manager, supervising five route salespersons. Promisel had an unblemished work performance and attendance record, and by 1987, when the events prompting this lawsuit occurred, he had greatly expanded the distribution base of the company during his seven years as sales manager.

After Promisel was hospitalized for an irregular heartbeat in January 1987, First American and Promisel reached an agreement, effective May 1987, whereby Promisel would work three days a week at reduced pay, and would take six weeks vacation annually, three of which would be unpaid. Under the agreement, Promisel's duties and responsibilities would remain the same.

Unbeknownst to Promisel, First American had apparently been planning his replacement for a number of months. In January 1987, over Promisel's objection, the company sent another salesman to a business meeting in Puerto Rico in Promisel's place. Promisel objected because he had developed First American's Puerto Rican business and had serviced it for years. In September, without telling Promisel, the company hired Harlan Smith, age thirty, to replace him. Smith was told that he was being hired to replace an "older gentleman" because they were looking for

"younger blood," someone who was "young and aggressive." First American asked Promisel to train Smith, and he did so.

On December 18, 1987, the day after Promisel left on his agreed-upon vacation, First American fired him in a letter sent to him at his vacation address. The letter stated that he was being terminated because his part-time arrangement was not working out. That day, his job was taken over by Smith.

On June 6, 1988, Promisel filed a charge of discrimination with the New York State Division of Human Rights ("SDHR") and with the federal Equal Employment Opportunity Commission ("EEOC"). The EEOC conceded jurisdiction to the Division of Human Rights, pursuant to 29 C.F.R. § 1626.9, and the latter commenced an investigation. After waiting the required 60 days, and having received no resolution of his charge, Promisel filed the instant action in the Southern District of New York (Goettel, *Judge*) under the ADEA, 29 U.S.C. § 626(c). He also asserted violations of New York's Human Rights Law, New York Exec.Law § 296. Promisel's complaint with SDHR was dismissed for administrative convenience on October 27, 1989.

At trial, Judge Goettel instructed the jury that under the ADEA it could only award lost wages and benefits, but that under the pendent New York claim it could award damages for emotional distress. The jury returned a verdict in favor of Promisel for $75,622 in lost wages and $125,000 for emotional distress. First American moved for judgment n.o.v. and a new trial. Promisel cross-moved for interest and attorneys' fees. Judge Goettel denied First American's motions and granted Promisel's. On October 16, 1990, he entered an amended final judgment for lost wages and benefits, emotional distress, and attorneys' fees.

On appeal, First American argues that the court improperly exercised pendent jurisdiction over the New York age discrimination claim and thus lacked subject matter jurisdiction to give an emotional distress

damage issue to the jury. First American next asserts that it was error for the district court not to apply unemployment compensation and social security benefits received by Promisel before he reached age sixty-five as an offset against the lost wages damage award. Finally, First American claims that Judge Goettel erred in denying its motions for summary judgment, a directed verdict, judgment n.o.v. and a new trial, because Promisel presented insufficient evidence that he was *not* fired because First American was displeased with his part-time working arrangement.

## DISCUSSION

### A. *Pendent Jurisdiction over Promisel's State Age Discrimination Claims*

We note at the outset that First American voices its objection to the court's exercise of pendent jurisdiction over Promisel's state law claim for the first time on appeal. Although we would not normally consider an issue not raised below, the lack of subject matter jurisdiction may be raised at any time, by the parties, or by the court *sua sponte. See* Fed.R.Civ.P. 12(h)(3); *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 72 (2d Cir.1988); *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir. 1984). We therefore must consider the issue.

A federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while not automatic, is a favored and normal course of action. "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). A court has the power to exercise pendent jurisdiction over plaintiff's state claims together with his federal claims if they derive from "a common nucleus of operative fact," *id.,* and commonly will exercise it if "considerations of judicial economy, convenience and fair-ness to litigants" weigh in favor of hearing the claims at the same time. *United Mine Workers,* 383 U.S. at 726, 86 S.Ct. at 1139. The availability of pendent jurisdiction was codified in 1990 at 28 U.S.C. § 1367(a), which states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Promisel's state law claim under New York Executive Law § 296, which alleges that First American discharged him because of his age, clearly derives from the same nucleus of operative fact as his federal ADEA claim. They both arise from his December 18, 1987, dismissal and replacement by Smith. Yet First American proffers two arguments that Judge Goettel's decision to exercise pendent jurisdiction should nonetheless be disturbed.

First American first argues that 29 U.S.C. § 633(a) prevents a plaintiff from invoking state law in either state or federal court once plaintiff has elected to proceed under the ADEA, as Promisel has done. Second, it argues that New York Executive Law § 297, subd. 9, prevents a plaintiff from maintaining the state law cause of action in "any court of appropriate jurisdiction" once the plaintiff has elected to file a complaint with the SDHR, as Promisel did here. Therefore, according to First American, Promisel is barred from asserting his state claims in federal court as a matter of both federal and state law. We believe that First American has read both 29 U.S.C. § 633(a) and N.Y.Exec.Law § 297 too restrictively.

#### 1. *29 U.S.C. § 633(a)*

29 U.S.C. §§ 626 and 633 read as follows, in relevant part:

§ 626(c)(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction ...

(d) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful

discrimination has been filed with the Equal Employment Opportunity Commission.

§ 633(a) Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action.

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated.

The structure of this complicated legislative scheme and its accompanying regulations can be summarized as follows. A plaintiff who wishes to bring a discrimination claim under the ADEA must first file with the EEOC. In states such as New York which have their own agencies to investigate and obtain relief for discriminatory practices, however, the EEOC refers all such complaints to that state agency. *See* 29 C.F.R. § 1626.9. This is because, under § 633(b), a plaintiff in such a state may not bring suit under the ADEA until sixty days after the plaintiff has commenced proceedings with the state agency handling discrimination claims. A plaintiff must therefore begin his suit by filing, either on his own or through the EEOC's referral, with the state agency before the federal ADEA suit can proceed further.

■ Sixty days after filing with the state agency, a plaintiff may bring a federal ADEA claim. *See* § 633(b). At that point, however, the plaintiff is confronted with § 633(a), which states that the filing of a federal ADEA claim then "supersedes any state action." This court has interpreted the word "supersede" to merely mean "stay," in accordance with the legislative

history to the section. *See Dunlop v. Pan American,* 672 F.2d 1044, 1049–50, n. 7 (2d Cir.1982); H.R. No. 805, 90th Cong. 1st Sess., reprinted in [1967] U.S.Cong. & Admin.News 2213, 2219, 2224. The section stays, but *does not* dismiss, the state action during the pendency of the federal court case.

■ First American argues that § 633(a)'s stay on state action operates to preclude federal courts from considering pendent state claims in federal A.D.E.A. suits, relying on *Pandis v. Sikorsky Aircraft Div. of United Technologies Corp.,* 431 F.Supp. 793 (D.Conn.1977). That case held that § 633(a) barred a plaintiff from asserting in his federal action state law claims which were pending in front of the Connecticut Commission of Human Rights and Opportunities, stating "[t]he fact that the filing of a federal ADEA lawsuit supersedes and stays any action pending in a state forum is a persuasive indication that it would be inappropriate for a federal court considering a federal ADEA claim to assume pendent jurisdiction over a cause of action grounded in state law." 431 F.Supp. at 796. Allowing a plaintiff to assert a claim in federal court that would be stayed in state court, First American argues, would allow a "plaintiff to get in through a side door what he could not otherwise get in through the front door."

We believe, however, that both First American and *Pandis* are mistaken in assuming that § 633(a)'s stay provision applies to actions pending in any and all state forums. The "supersede" language comes at the end of a sentence which deals exclusively with the jurisdiction of state *agencies* performing "like" functions in handling age discrimination claims: "Nothing in this chapter shall affect the jurisdiction of any agency of any State.... except that upon commencement of action under this chapter such action shall supersede any State action." It seems logical to assume then that the "state action" referred to in the supersession provision is the same type of "state action" that is the subject of the first part of the sentence—that of state agencies handling claims of employment

discrimination. This is the only variety of state action the section addresses. To read "state action" more broadly to include actions independent of those handled by state agencies—including state court actions—would be to divorce those words from the context in which they appear—a statutory provision recognizing the power of state agencies to handle discrimination claims on their own.

It is not difficult to understand why Congress would have wanted the commencement of an ADEA action, with its required period of EEOC investigation and conciliation, *see* 29 U.S.C. § 626(d), to stay a state agency's own investigation and conciliation of the same claim. Allowing two separate agencies—the EEOC and a state agency—to simultaneously expend scarce resources to investigate the same allegation of discrimination would be unnecessarily duplicative. In fact, the statutory scheme of the ADEA is designed to keep this from happening. When the EEOC receives a complaint of discrimination—the statutorily prescribed method of beginning every federal suit—it refers the complaint to the plaintiff's state agency to process, if such an agency exists. *See* § 633(b). In referring the complaint, the EEOC defers to that agency's investigation and conciliation process. If that process is not fruitful, i.e. if after 60 days the case is not resolved, then the federal investigation commences. *See* 29 U.S.C. § 626(d)(2). At this point, the state investigation then defers to the federal—its activities are stayed pending the completion of the federal case. *See* § 633(a). At no time, therefore, are the two agencies both attempting to investigate, conciliate, and adjudicate the same complaint.

When viewed in the context of its particular facts, the holding in *Pandis*, if not its dicta, is consistent with our conclusion that § 633(a) stays state administrative proceedings only. Under Connecticut law, the state law involved in *Pandis*, a plaintiff has no right to commence a judicial proceeding to redress a claim of discrimination. A plaintiff's only access to the courts is by appealing a final order of an administrative tribunal or a dismissal of his complaint from the administrative agency. Therefore when the *Pandis* court applied § 633(a) to stay a state cause of action in federal court that state action would necessarily have been an administrative, not a judicial, proceeding. Also, since the plaintiff in *Pandis* had no available right of direct judicial redress under state law, there was no state cause of action in existence to append to plaintiff's federal court action. In such a situation, a plaintiff would truly be getting through the side door what he would have no right to get through the front door—an action in state court for discrimination. In the present case, however, New York law gives Promisel a right to bring a state court action. We hold therefore that § 633(a)'s stay on state administrative proceedings does not apply to any of his state claims, since none are before New York's administrative agency.

### 2. *New York Executive Law § 297*

First American argues next, however, that New York Executive Law § 297 subd. 9's "election of remedies" provision acts to bar a state court action once a plaintiff has chosen an administrative remedy. Therefore, First American argues, if a plaintiff is barred under state law from suing in state court, he should not be able to assert state claims in his federal court proceedings. Again, we also disagree with First American's reading of this statute.

Section 297 states:

9. Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.

This provision requires a plaintiff to elect a remedy for a discrimination claim. The plaintiff can bring either an administrative action or a court proceeding, but not both. Once the plaintiff has commenced an administrative proceeding the plaintiff cannot bring a court action while the administrative proceeding is ongoing. Therefore by the section's terms, Promisel could not bring a state court action while his state administrative action was proceeding.

■ In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim. *See United Mine Workers,* 383 U.S. at 726, 86 S.Ct. at 1139; *see also Van Gemert v. Boeing Co.,* 553 F.2d 812, 813 (2d Cir.1977) ("It is the source of the right, not the basis of federal jurisdiction, which determines the controlling law.") This includes any restrictions set by the state on whether a plaintiff may bring a court action regarding the claim. If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court. *See Hunnewell v. Manufacturers Hanover Trust Co.,* 628 F.Supp. 759, 761 (S.D.N.Y.1986).

■ Therefore a federal court cannot exercise pendent jurisdiction over a state claim for age discrimination during an ongoing state administrative proceeding. This is true even when plaintiff's election of an administrative remedy is "forced" by the filing of a federal complaint with the EEOC that is then automatically referred to the SDHR. Under New York law, the EEOC's action is deemed to exercise plaintiff's option for an administrative forum. *See Scott v. Carter–Wallace,* 541 N.Y.S.2d 780 (1st App.Div.1989); *app. dismissed,* 75 N.Y.2d 764, 551 N.Y.S.2d 903, 551 N.E.2d 104 (1989).

■ Nonetheless, Section 297 clearly provides that a plaintiff whose complaint before the state agency is dismissed for administrative convenience may seek a court remedy. Here the administrative complaint was so dismissed. Once this occurred, the "election of remedies" barrier was thereby removed as to state court action, and through pendent jurisdiction, as to federal court action on state claims. Although Promisel had asserted his state claim in his original complaint, he presumably would have been entitled to assert it by amendment upon dismissal of the complaint before the state agency, see Fed. R.Civ.P. 15(a), so his state claim is properly included in the federal litigation. First American concedes that it never moved to dismiss the state claim below.

■ First American argues, however, that 29 U.S.C. § 633(a)'s bar on state administrative action applies even to action on a plaintiff's request that the administrative action be administratively dismissed, or to an administrative agency's *sua sponte* decision to so dismiss the case. An action to dismiss is "state action," First American asserts, and cannot proceed while the federal action is pending. We disagree. The point of § 633(a) is to guard against duplication of federal and state administrative remedies; its purpose would certainly be served by a state agency's decision to give up its handling of the case. Furthermore, it strains the meaning of "action" to include a state's decision not to consider a case on the grounds of administrative convenience. If anything, this seems to be state *inaction* in the face of plaintiff's desire to pursue a federal remedy.

First American argues, finally, that if plaintiffs are allowed to circumvent the election of remedies provision by moving for administrative dismissals of their administrative complaints after bringing federal lawsuits, this would undermine the operation of the provision. The statutory structure, however, explicitly provides for such administrative dismissals. Even at the request of the plaintiff, the administrative dismissals do not circumvent the operation of the election of remedies provision. New York courts confronted with a plaintiff's request for an administrative dismissal of his N.Y.Exec.Law § 296 complaint so that state claims could be pursued in an already filed federal action have held that

the election of remedies provision for administrative dismissals are "in conformance with regulations, as retaining the complaints by [S]DHR would not advance the State's human rights goals, especially since it would compel the use of scarce State resources where the complainants had the desire and resources to bring the complaints in Federal court." *Eastman Chemical Products, Inc. v. New York State Division of Human Rights,* 162 A.D.2d 157, 556 N.Y.S.2d 571, 572 (1st.App.Div.1990); *see also Columbian Rope Co. v. New York State Division of Human Rights,* 572 N.Y.S.2d 196 (4th App.Div.1991); *Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494, 505 (S.D.N.Y.1989) (allowing state sex discrimination claims which were administratively dismissed from the State Division of Human Rights after federal suit filed to be brought along with federal suit.); *Martel v. Dean Witter Reynolds, Inc.,* 738 F.Supp. 53 (E.D.N.Y.1990) (same, with age discrimination claims). We see no need to read in a restriction upon a plaintiff's ability to have such suits dismissed in order to bring state claims in an ongoing federal proceeding where no such restriction exists in the statute, and which New York courts themselves do not appear to contemplate.

For all the foregoing reasons, we hold that the district court was fully empowered to exercise pendent jurisdiction over Promisel's state law claim.

B. *Failure to Offset Promisel's Social Security and Unemployment Payments from his Damage Award*

■ First American argues that Judge Goettel erred in failing to offset $4,600 in unemployment benefits and an undetermined amount of social security benefits from Promisel's award of $75,622 for lost wages and benefits. The $75,622 award was premised on the value of wages and benefits Promisel would have received had he continued working for First American until his sixty-fifth birthday. Yet First American points out that if indeed Promisel had been working until he was sixty-five, he would not have received unemployment and social security benefits for that period. Therefore if the purpose of his lost wages

damage award is to duplicate Promisel's financial situation had he not been fired, the amount of benefits received from unemployment and social security must be deducted from it.

Whether unemployment compensation and social security benefits should automatically be deducted from an award of lost wages has not been answered by this circuit. In *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 86–87 (2d Cir.1983), we upheld the district court's setoff of pension benefits paid by the employer to the plaintiff employee from the jury's award of lost wages. Without this setoff the employer would, in effect, be paying the employer current wages *and* retirement or unemployment benefits for the same period. In this case these benefits come not from the employer, but from a collateral public source. While collateral source payments do represent an additional benefit to the plaintiff, we note a sister circuit's view that "[a]s between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer." *Maxfield v. Sinclair International,* 766 F.2d 788, 795 (3d Cir.1985) (holding that social security benefits should not be set off from ADEA lost wages award), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). *See also Meschino v. Int'l. Tel. & Tel. Corp.,* 661 F.Supp. 254 (S.D.N.Y.1987); *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951) (holding unemployment compensation payments not deductible from back pay award under the National Labor Relations Act). First American made no objection, however, to Judge Goettel's failure to either charge the jury that they should offset collateral source payments, or to deduct such payments from the award himself. Therefore First American has waived this claim on appeal. *See* Fed.R.Civ.P. 51.

C. *First American's Motion for a Directed Verdict, Judgment Notwithstanding the Verdict, and a New Trial*

Finally, First American contends that Judge Goettel erred in not granting its

motions, respectively, for summary judgment, a directed verdict, judgment n.o.v. and a new trial, because the only permissible conclusion to be drawn from the evidence was that First American terminated Promisel because it was dissatisfied with the part-time work arrangement they had worked out, not because of Promisel's age. We disagree.

Under the familiar test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff has the burden of establishing a prima facie case of discrimination. This he can do by showing that he was a member of a protected age group, that he was qualified for his position, and that he was discharged under circumstances giving rise to an inference of discrimination. The employer then has the burden of articulating a legitimate, nondiscriminatory reason for its action. *McDonnell*, 411 U.S. at 802, 93 S.Ct. at 1824. The burden shifts back at that point to the plaintiff to prove that this reason is pretextual. *McDonnell*, 411 U.S. at 804–05, 93 S.Ct. at 1825–26; *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). A plaintiff is not required to show that age was the only determinative factor in the discharge, only that it was a determinative factor, one that made a difference in the employer's decision to terminate the employee. *Benjamin v. United Merchants and Mfrs.*, 873 F.2d 41, 43 (2d Cir.1989).

■ In this case, the evidence was sufficient for the jury to reasonably have found as pretextual First American's claim that Promisel was fired because his part time arrangement was not working out, and that at least one of the determinative factors in firing Promisel was First American's desire to replace him with a younger employee. Apart from the age disparity between Promisel and Smith, there was evidence that in September 1987 the latter was told that he was needed to replace an "older gentleman" because they were looking for "younger blood." We decline First American's invitation to substitute our judgment on this factual issue for that of

the jury, and we affirm Judge Goettel in likewise refusing to do so.

Affirmed.