Lois L. HALL, Plaintiff,

v.

DAKA INTERNATIONAL, INC., d/b/a
Daka Restaurants, Ira Adler, and
Steven Andersen, Defendants.

No. 95–CV–1099.

United States District Court,
N.D. New York.

Dec. 18, 1996.

age, sex, and race by her former employer, defendant Daka International, and two of her former supervisors, Ira Adler and Steven Andersen. Daka is a contract food service company with 500 branches throughout the United States, including schools, colleges, private corporations and other businesses. Daka currently employs between 7,000 and 10,000 employees.

Hall, a white female, was a manager at Daka until she was laid off in February, 1994. At Daka, Hall held a series of managerial positions at different Daka branches in upstate New York. In each position she had overall responsibility for the food service operation at the branch to which she was assigned. Hall's last regular full-time position with Daka was as Food Service Manager at St. Joseph's Provincial House, a residential home of prayer for nuns, in Latham, New York. At St. Joseph's, Hall was responsible for planning meals for the approximately 250 sisters and their guests, supervising approximately twenty hourly food service employees, and managing a budget of almost $1 million.

In 1992, Defendants aver that Hall's supervisor, defendant Steven Andersen, began to receive complaints from the sisters at St. Joseph's concerning menu problems and staff morale problems. (Anderson Aff. at ¶ 5.) Following these complaints Andersen and his immediate supervisor, Leo Titus, met with Sisters Yvette and Johanna—the co-administrators at St. Joseph's—to discuss the situation at St. Joseph's. The sisters told Daka that they considered the problems to be very serious and that they were considering alternatives to Daka. (Anderson Aff. at ¶ 11.) Daka suggested that Hall could be transferred to another location and that a new Food Service Manager could be found for St. Joseph's. (Anderson Aff. at ¶ 11.) The sisters agreed that in the interests of the employees and the residents of St. Joseph's, this would be the best solution. (Sister Yvette Martin Aff. at ¶ 6.)

Following Hall's removal from St. Joseph's, she held the temporary manager posi-

Harder Silber and Bergan, Albany, NY (George W. Harder, of counsel), for Plaintiff.

Squadron, Ellenoff, Plesent & Sheinfeld, New York City (Dori A. Hanswirth, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND [1]

Plaintiff Lois Hall alleges that she was discriminated against on the basis of her

---

[1] The following factual background is taken from Plaintiff's Complaint and from those portions of Defendants' Local Rule 7.1(f) Statement that Plaintiff does not contest in her Rule 7.1(f) Statement. In other words, the following facts are those that appear to be undisputed.

tion of Cafeteria 3 at Empire State Plaza from late October 1993 though December 1993 where she reported to defendant Ira Adler. However, at the end of Hall's temporary assignment, Adler avers that he was not satisfied with Hall's performance at Cafeteria 3, which he did not believe met Daka's standards for cleanliness, inventory rotation, and recipe execution. (Adler Aff. at ¶ 5.)

In January 1994, at the conclusion of her temporary assignments, Hall took a one-month paid vacation. Upon her return from vacation in early February 1994, Defendant asserts that there were no temporary positions or regular full-time positions that Hall could fill. (Andersen Aff. at ¶ 16.) Accordingly, Plaintiff was laid off effective February 6, 1994. (Complaint at ¶ 7(c).)

Although Daka states that it had no policy obligating it to locate a new position for an employee who had been removed from a prior position, following her layoff, Hall applied for three positions listed on the Daka job postings she received. According to Defendants, Hall was not hired for those positions because of her "mediocre" performance under defendant Adler (Adler Aff. at ¶ 12), who was the manager for two of the potential positions, and because she allegedly did not have the experience necessary to handle the increased work responsibilities required of the third position. (Ruffen Aff. at ¶ 5.)

On November 28, 1994, Hall filed a discrimination charge with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC"). Hall's affidavit in support of her discrimination charge alleged that she was discriminated against on the basis of her age. On June 20, 1995, the EEOC issued a Notice of Right to Sue that provides that Plaintiff may bring an action in federal court on the basis of her claim of age discrimination if such action is brought within 90 days of the receipt of Notice.

### A. THE CLAIMS

Plaintiff Hall's Complaint asserts claims for age discrimination, sex discrimination, and reverse race discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2 et seq., New York Human Rights Law, N.Y.Exec.L. § 290 et seq., and New York Civil Rights Law, N.Y.Civ.Rts.L. § 40–c et seq. Plaintiff also claims a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, for discrimination in connection with her eligibility for pension benefits. Plaintiff requests reinstatement, back pay, forward pay, compensatory, and punitive damages.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56(c), a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Furthermore, it is the substantive law that will determine what facts are material to the outcome of a case. See Anderson, 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1355–56. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. Gallo v. Prudential Residential, Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir.1994).

## B. ADEA CLAIM

Plaintiff brings claims for age discrimination under the ADEA, 29 U.S.C. § 621 *et seq.*, and for sex discrimination and reverse race discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2 *et seq.* Because the standards for liability under the ADEA and Title VII are similar, standards developed under Title VII are often applied to ADEA claims. *See, e.g., McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) ("The substantive, anti-discrimination provisions of the ADEA are modeled upon the prohibitions of Title VII."). Accordingly, much of the law outlined here under this Court's ADEA analysis is equally applicable in analyzing Plaintiff's Title VII claim, which is discussed *infra.*

■ Initially, the Court notes that although summary judgment is no longer a disfavored process for the elimination of groundless claims, *see Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (summary judgment favored to dispose of meritless claims), a district court should be wary of granting summary judgment in an ADEA case because the device is generally inappropriate where, as is typical, an employer's state of mind is relevant. *Gallo*, 22 F.3d at 1224. This is not to say that summary judgment is wholly inappropriate; rather, as the Second Circuit has noted, "the summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. [T]he purposes of summary judgment ... apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Considering the relative ease of bringing a suit alleging discrimination and the difficulty and expense of defending against such a suit, courts correctly find summary judgment proper where allegations of discriminatory intent are merely conclusory.

### i. *Prima facie* case under ADEA

■ Under the ADEA, an employer is prohibited from discharging an employee "because of [the employee's] age." 29 U.S.C. § 623(a)(1). However, an employer may lawfully discharge an employee based on reasonable factors other than age. 29 U.S.C. § 623(f)(1). In the Second Circuit, ADEA cases are analyzed under the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case. *See Promisel v. First American Artificial Flowers*, 943 F.2d 251, 259 (2d Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Under the test articulated in *McDonnell Douglas*,

> a plaintiff has the burden of establishing a *prima facie* case of discrimination. This he can do by showing that [ (1) ] he was a member of a protected age group, [ (2) ] that he was qualified for his position, [ (3) ] that he was discharged, [and (4) that he was discharged] under circumstances giving rise to an inference of discrimination. The employer then has the burden of articulating a legitimate, nondiscriminatory reason for its action.... The burden shifts back at that point to the plaintiff to prove that this reason is pretextual.

*Promisel*, 943 F.2d at 259. Incidentally, this burden-shifting analysis also applies to age discrimination claims under New York's Executive Law. *See Charrette v. S.M. Flickinger Co.*, 806 F.Supp. 1045, 1054–55 (N.D.N.Y.1992).

The Court will now examine each of the steps in the burden shifting analysis in order to determine whether Plaintiff has put forth a viable cause of action. We must be mindful that regardless of how these burdens are described, Plaintiff retains the ultimate burden of persuading the fact finder. *See Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 161 (2d Cir.1991).

Here, the parties do not dispute the fact that Hall has established the first element of her *prima facie* case. Plaintiff was 53 years old when she was hired by Daka, and was 63 years old at the time of her termination. Thus she clearly falls within the protected group under the ADEA, which includes all persons over the age of 40. 29 U.S.C. § 631(a). There is also no dispute as to the

third element of the *prima facie* case—that plaintiff was discharged. The controversy here surrounds the remaining two elements, job qualification and inference of discrimination.

Because Plaintiff is claiming age discrimination in both her termination and in Daka's failure to rehire, the Court's analysis is somewhat more complicated. In ADEA cases claiming improper discharge, the Second Circuit has modified the job qualification element of the *McDonnell Douglas* test. Instead of focusing "on the plaintiff's qualifications, which are the relevant inquiry in the hiring context, the focus is on measuring the employee's ... job performance." *Charrette,* 806 F.Supp. at 1056 (*citing Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1045 (2d Cir.1992)). This job performance component has been defined in terms of whether the employee was doing the job well enough "[to] meet [her] employer's legitimate expectations." *Meiri,* 759 F.2d at 995. With respect to an employer's legitimate expectations, the Second Circuit has instructed that "courts must refrain from intruding into an employer's policy apparatus or second-guessing a business' decision-making process" *Meiri,* 759 F.2d at 995 (*citing Sweeney v. Research Found. of the State Univ. of New York,* 711 F.2d 1179, 1187 n. 11 (2d Cir.1983)).

■ Here, there is considerable debate as to whether Plaintiff was meeting Daka's legitimate expectations in her position at St. Joseph's, and whether Plaintiff was "qualified" for the positions she applied for at Daka after her termination. However, the analysis of whether an employee is "qualified" under the *McDonnell Douglas* test often folds into the analysis of whether the employer had a nondiscriminatory reason to discharge the employee or not hire the employee. Moreover, the determination of whether Plaintiff has established a *prima facie* case may be obviated if the employer had a legitimate nondiscriminatory reason, which Plaintiff fails to rebut, for the termination and failure to rehire. Accordingly, the Court will examine Daka's reasons for terminating Hall and subsequent refusal to rehire her.

### ii. Non-discriminatory reason for termination and failure to rehire

■ Assuming *arguendo* that Plaintiff has established her *prima facie* ADEA claim, establishment of the *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). In order to rebut this presumption, the employer has the burden of producing evidence that the employee was discharged for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The defendant, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (*citing Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295–96, 58 L.Ed.2d 216 (1978)). As the Supreme Court stated in *Texas Dep't of Community Affairs v. Burdine:*

> It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted.

*Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The strength of the defendant's rebuttal, to a large extent, depends on the strength or weakness of plaintiff's *prima facie* case. *See Lieberman v. Gant,* 630 F.2d 60, 66–67 (2d Cir.1980) (noting relationship between the burden borne by the employee and the employer).

Moreover, the employer need only "articulat[e] some legitimate, nondiscriminatory reason" for the termination. *Board of Trustees v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978). In this circuit, "[i]t is enough for the defendants in the second phase of the case to bring forth evidence that they acted on a neutral basis. They do not

have the burden of establishing that their basis was sound." *Lieberman,* 630 F.2d at 65.

Addressing Hall's performance at St. Joseph's, Defendants offer copious evidence that Daka received complaints from the co-administrators of the convent concerning Plaintiff's management style and the quality of the food service. (Andersen Aff. at ¶¶ 5–12; Sister Yvette Martin Aff. at ¶ 6.) According to Daka, Hall was abusive, favored certain employees over others, blamed employees for mistakes made by others, and yelled and screamed at staff in front of other employees. (Sister Yvette Martin Aff. at ¶¶ 4–5; Maloney Aff. at ¶¶ 2–7; Schnare Aff. at ¶¶ 2–6.) In addition, Daka asserts that residents of St. Joseph's complained about the food service to Sister Yvette Martin and to Maloney, whereby Sister Yvette told Andersen that St. Joseph's was considering alternatives to Daka. (Sister Yvette Martin Aff. at ¶ 3; Maloney Aff. at ¶ 8; Andersen Aff. at ¶ 12.)

In response, Hall states that "[n]one of the contents of [Defendants'] affidavits were ever subject matter for disciplinary action against me by Daka at any time I was in Daka's employ." (Hall Aff. at ¶ 1.) Hall challenges the affidavits as "based on uncorroborated hearsay" from a "difficult" staff. (Hall Aff. at ¶¶ 6, 13.) However, Hall provides no factual opposition to Defendants' assertion that her job performance was considered inadequate.

Turning to Daka's refusal to rehire Hall, Defendant asserts that Hall was not hired for the positions to which she applied because of her "mediocre" performance under defendant Adler and because she allegedly did not have the experience necessary to handle the increased work responsibilities required of the positions. Two of the positions Hall applied for at Empire State Plaza reported to defendant Adler. According to Adler, Hall was not qualified for one of the positions because of the significantly greater magnitude of that position, $2.8 million, compared to the positions Hall had held in the past. (Adler Aff. at ¶ 11.) With regard to the other position under Adler, Adler did not hire Hall because

of her "mediocre" performance as manager of Cafeteria 3. (Adler Aff. at ¶ 12.)

Hall also applied for a position at Howard University. However, Daka asserts that the manager there did not believe Hall was qualified for the position because her prior experience was on a much smaller scale and she had no prior experience with a food service operation at a school or college. (Ruffen Aff. at ¶ 5.) Other than the three positions discussed, Hall did not formally apply for any other positions within Daka. (Hall Deposition at 139.)

In response, Hall states, in the most conclusory terms, that "[t]he affidavits of Nichols, Adler, Anderson (sic), Maloney, Martin, Ruffen and Schnare are absolute nonsense." (Hall Aff. at ¶ 1.) In addition, Hall challenges the affidavits as "based on uncorroborated hearsay." (Hall Aff. at ¶ 6). Again, Plaintiff offers little, if any, factual support for her claim that she was qualified for the positions she applied for. Simply stating that she considers herself to be qualified is not sufficient without some factual basis to support her conclusion.

Defendant has also presented evidence supporting the conclusion that, although Plaintiff may have been an exemplary manager at times during her career, her performance at St. Joseph's began to decline below-acceptable levels in 1993. *See Meiri,* 759 F.2d at 995 (finding that although plaintiff was "qualified" to be hired as a restaurant manager, he was not doing the job well enough "[to] meet his employer's legitimate expectations" at the time he was discharged). In the end, the Court notes that the Second Circuit has instructed that "courts must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process" *Meiri,* 759 F.2d at 995 (*citing Sweeney,* 711 F.2d at 1187 n. 11).

As stated earlier, Daka need not persuade the Court that it was *actually motivated* by the proffered reason, it need only produce evidence that the employee was discharged for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Moreover, "[Defendants] do not have the burden of establishing that their basis was sound." *Lieberman,* 630 F.2d at 65. This

Court finds that the proffered reasons given by Daka for its decision to terminate Plaintiff and its decision not to rehire her were based on legitimate, nondiscriminatory reasons. Daka has thus successfully rebutted Plaintiff's presumption of discrimination.

The burden now falls back on Plaintiff to show that the proffered reasons are mere pretext, and that unlawful discrimination was the real reason for Daka's termination of Plaintiff and its refusal to rehire her.

### ii. Pretext and Unlawful Discrimination.

■■■ If the employer has articulated a legitimate nondiscriminatory reason for the termination, the plaintiff must then present evidence establishing intentional discrimination. *Saint Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). On this issue, "the evidence as a whole ... must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus ... Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 843 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

■■■ Moreover, "[a]fter the employer articulates legitimate, non-discriminatory reasons for the employee's discharge, the employee must be afforded an opportunity to prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for discrimination." *Meiri,* 759 F.2d at 997 (*citing Burdine,* 450 U.S. at 256–57, 101 S.Ct. at 1095–96). As the Supreme Court stated in *St. Mary's Honor Ctr. v. Hicks,* it is now incumbent on the plaintiff to prove, not only falsity of the proffered reasons given by the employer, but also that discriminatory motive was the true reason for the discharge. 509 U.S. 502, 517–19, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993).

■■■ From the evidence submitted, there is nothing tending to show that Plaintiff's termination was due to reasons other than the fact that Daka viewed Plaintiff's performance as less than satisfactory. Equally clear is the lack of evidence showing that Daka's refusal to rehire Plaintiff was made for reasons other than the factors stated above.

In opposition, Plaintiff does not offer one scintilla of direct evidence in support of her claim that Daka's proffered reasons were merely a pretext, nor does she offer any compelling circumstantial evidence of pretext. Her opposition consists entirely of statements by Hall that Daka did not communicate its dissatisfaction with her directly, that Daka did not "document the complaints in Hall's personnel file," and that Daka's assertions are hearsay. However, Hall's only probative statement on this issue relies on hearsay of her own, and double hearsay at that, when she states that "[when Lou Sakall] asked Adler why he didn't select [Hall] as a manager at the Empire State Plaza. Sakall told Hall that Adler replied that she was too old." (Hall Aff. at ¶ 25.) At least when Defendants offer hearsay, they provide an affidavit from the declarant for support. Hall, however, provides no such support.

After an examination of the entire record, there is nothing to indicate that Daka's proffered reason for terminating Plaintiff was anything but truthful. Plaintiff has submitted insufficient evidence to indicate that reasons other than what has been proffered by Daka played a role in the decision process. Accordingly, Plaintiff has not met her burden in showing that a triable issue of fact exists as to whether Daka's proffered reasons for her termination were merely pretext. And, for this reason, Plaintiff's discriminatory termination claim must be dismissed.

The same conclusion is reached as to Plaintiff's claim that Daka's refusal to rehire her was discriminatory. The affidavits reflect that the decisions whether to rehire Hall were made by Ira Adler and William Ruffen, the persons in charge of the positions to which Plaintiff applied. Adler and Ruffen looked into several different non-discriminatory factors, such as the prior performance of the employee and the extent and scope of the employee's experience, to make their determination. There is nothing in Plaintiff's submissions to indicate that the reasons given for Daka's refusal to rehire Hall were pretextual. Thus, Plaintiff has not met her burden

in showing that a triable issue of fact exists as to whether Daka's proffered reasons for refusing to rehire her were merely pretext. Accordingly, Plaintiff's discrimination claim based on Daka's refusal to rehire her must also be dismissed.

It is worth noting that even if Plaintiff was successful in demonstrating that Daka's proffered reasons were false, Plaintiff's claim would nevertheless fail due to her inability to show that *discriminatory animus* was the motivating factor driving Daka's employment decisions. *See Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56 (conclusory affidavits are not sufficient to withstand summary judgment). Simply stated, there is nothing that indicates that discrimination played a role in Daka's decision not to employ Lois Hall.

### C. TITLE VII

Plaintiff Hall's Complaint also asserts claims for age discrimination, sex discrimination, and reverse race discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2 *et seq.*

Similar to claims under the ADEA, actions brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,[2] also involve a burden shifting analysis. *See, e.g., Russo v. Trifari, Krussman & Fishel, Inc.*, 837 F.2d 40, 43 (2d Cir.1988). First, Hall must prove a *prima facie* case of discrimination by a preponderance of the evidence. Second, once Hall has presented such a *prima facie* case, the burden then shifts to the defendants to "articulate" some nondiscriminatory reason for the alleged discriminatory action. Finally, in the event that Defendants are able to meet their burden, Hall must be given the opportunity to prove by a preponderance of the evidence that the proffered reasons are merely a pretext for discrimination. *See Burdine*, 450 U.S. at 253–254, 101 S.Ct. at 1093–94; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825;

*Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1369 (2d Cir.1989).

As discussed above, Plaintiff has failed to produce evidence that shows Daka's legitimate nondiscriminatory reason for refusing to employ Hall was merely a pretext for age discrimination. Accordingly, Hall's claim of age discrimination under Title VII must also be dismissed.

■■■ Turning to Hall's claims of sex discrimination and reverse race discrimination, it is clear from both Plaintiff's Complaint and from her papers in opposition to Daka's Motion for Summary Judgment, that she can aver no set of facts in support of a *prima facie* case of sex and/or reverse race discrimination. In fact, Hall's Affidavit contains absolutely no allegations of race or gender discrimination whatsoever. Moreover, Plaintiff testified at her deposition that she "did not know if race was a factor in her layoff." (Hall Deposition at 141.) Her only mention of gender discrimination is the somewhat ambiguous statement in her deposition that she was laid off because of an alleged "old boy network" at Daka. (Hall Deposition at 140.)

Although a court must draw all reasonable inferences against the moving the party, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Here, Hall has not met her burden in opposing Daka's Motion for Summary Judgment on the issue of age, gender, and reverse race discrimination under Title VII. Consequently, Plaintiff's Title VII claim must be dismissed in its entirety.

### D. ERISA CLAIMS

■■■ Plaintiff also claims a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, for discrimination in connection with her eligibility for pension benefits.

---

**2.** Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

It shall be an unlawful practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race color, religion, sex, or national origin; . . .

42 U.S.C. § 2000e–2(a)(1).

■ Section 510 of ERISA prohibits an employer from discharging a participant in a benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To show a violation of section 510, a plaintiff must "demonstrate that [her] dismissal was motivated by preventing the vesting of pension benefits." *Logan v. St. Luke's–Roosevelt Hospital Ctr.*, 636 F.Supp. 226, 236 (S.D.N.Y.), *aff'd without op.*, 805 F.2d 391 (2d Cir.1986); *see also Dister v. Continental Group*, 859 F.2d 1108, 1111 (2d Cir.1988) (noting that 29 U.S.C. § 1140 was intended primarily to prevent "unscrupulous employers from discharging or harassing their employees from obtaining vested pension rights").

In her complaint, Hall alleges that Daka "prevented qualified employees from vesting or working until age 70." (Complaint at ¶ 34.) However, Hall concedes that the only retirement plan offered to her as a Daka employee was a 401(k) plan. (Hall Dep. at 175–76.) According to Daka, it may match in its sole discretion the funds contributed by an employee. Employees "vest" with respect to these matched funds after five full years of employment with Daka. (Nichols Aff. at ¶ 9.) Because Hall worked at Daka for almost 9 years, she was fully "vested" in the 401(k) plan. In addition, Hall admits that following her lay off she received the funds in the 401(k) plan. (Hall Dep. at 176.)

■ Although Hall provides no support whatsoever for her ERISA claim in her papers in opposition to Daka's Motion for Summary Judgment, the Court sees only one claim that Plaintiff could potentially assert. In essence, Plaintiff asserts that due to her layoff she is prevented from continuing to contribute to her 401(k) plan and thus receive Daka's matching funds. However, should this argument hold sway, every terminated employee whose employer provides any matching contributions could bring an ERISA action on the basis of every termination. This is clearly not the law under section 501 of ERISA. *See, e.g., Dister*, 859 F.2d at 1111 (no cause of action where loss of benefits is a "mere consequence of, but not a motivating factor behind, a termination of employment"); *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 232 (S.D.N.Y.1989) (granting summary judgment because claim was simply that "had he remained as an employee, he would have accrued additional benefits").

Consequently, Plaintiff's claim under ERISA must be dismissed.

## E. STATE LAW CLAIMS

Plaintiff's Complaint also asserts claims for age discrimination, sex discrimination, and reverse race discrimination in violation of the New York Human Rights Law, N.Y.Exec.L. § 290 *et seq.*, and New York Civil Rights Law, N.Y.Civ.Rts.L. § 40–c *et seq.* However, having determined that Plaintiff's federal claims should be dismissed, this Court chooses to exercise its discretion and dismiss the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, Plaintiffs state law claims are dismissed without prejudice.

## III. CONCLUSION

In summary, no genuine issue of material fact exists as to whether Plaintiff can prove age discrimination, sex discrimination, and reverse race discrimination in violation of the Age Discrimination in Employment Act or Title VII of the 1964 Civil Rights Act: she cannot. In addition, summary judgment is appropriate as to Plaintiff's claim that Daka violated the Employee Retirement Income Security Act. And, in the absence of a viable federal cause of action, this Court declines to exercise jurisdiction over Plaintiff's state law claims.

Therefore, the Complaint is dismissed in its entirety as against all defendants. However, Plaintiff's claims under the New York Human Rights Law and New York Civil Rights Law are dismissed *without prejudice.*

Accordingly, Defendants' Motion for Summary Judgment is hereby GRANTED.

**IT IS SO ORDERED**