**SEMI–TECH LITIGATION LLC, Plaintiff,**

v.

**BANKERS TRUST COMPANY, et al., Defendants.**

**No. 02 Civ. 0711(LAK).**

United States District Court, S.D. New York.

Nov. 8, 2002.

298

indenture trustee with respect to certain notes issued by Semi–Tech Corp. ("Semi–Tech"), for breach of the indenture, breach of fiduciary duty, and violation of the Trust Indenture Act, 15 U.S.C. § 77aaa (the "TIA"), (2) Semi–Tech's former auditors for fraud, negligent misrepresentation and malpractice, and (3) certain former officers and directors of Semi–Tech for breach of fiduciary duty, negligence, fraud and conspiracy to commit fraud, all allegedly on behalf of the debtors and the Semi–Tech note holders. The matter now is before the Court on the motion of defendants Douglas A.C. Davis, Albert Gnat and Kenneth C. Smith, all former outside directors of Semi–Tech to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted.

Robert I. Bodian, Kevin Ainsworth, Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., New York City, for Plaintiff.

Curtis C. Mechling, Stroock, Stroock & Lavan LLP, New York City, for Defendants Davis and Smith.

Harris N. Cogan, Blank Rome Tenzer Greenblatt, LLP, New York City, for Defendant Gnat.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff is a Delaware limited liability company formed in consequence of the approval of a plan of reorganization for Semi–Tech Group[1] under Chapter 11 of the Bankruptcy Code. It here sues (1) Bankers Trust Company ("BT"), a former

I

As the relevant aspect of the present motion is limited in scope, only a brief description of the facts alleged in the amended complaint is required. In 1993, Semi–Tech purchased from Akai Holdings Limited stock in Singer Sewing Machine Company ("Singer") for $848 million. It raised approximately $654 million for that purpose through the issuance of senior discount notes that were issued pursuant to an indenture between Semi–Tech's predecessor in interest and BT.[2] The indenture, as is customary, contained a variety of provisions defining as events of default self dealing and other transactions, including certain issuances of additional debt and the failure to maintain certain financial ratios.

---

1. Semi–Tech Group refers collectively to Semi–Tech Corp., Graeme Limited, and ISTM Investments (Barbados) Inc. Cogan Decl. Ex. B, ¶¶ 1.79, 1.126–1.127. Both Semi–Tech Corp. and ISTM Investments (Barbados) Inc.

were debtors in the bankruptcy. *Id.* ¶¶ 1.79, 1.126.

2. Cpt. ¶¶ 24–27.

The complaint alleges a long series of transactions commencing in late 1995 and continuing into 1999 by which, plaintiff claims, Semi–Tech acted dishonestly and/or imprudently and breached its obligations under the indenture.[3] It charges that BT breached its obligations to the note holders under the indenture and the TIA and its fiduciary duties by failing to protect adequately the note holders against these wrongs and by accepting deficient certificates from Semi–Tech officers that purported to affirm compliance with various requirements under the indenture agreement.

As noted, the three movants now before the Court all were outside directors of Semi–Tech for various portions of the relevant period, and all reside in Canada. There is no suggestion in the complaint that any of them entered or did anything in New York in connection with any of the matters alleged in the complaint. The claims against them, all of which arise at common law rather than under any federal statute, are that they (1) breached their duties as directors, and were negligent, in approving or failing to prevent the transactions of which plaintiff complains,[4] and (2) defrauded and conspired to defraud the note holders by submitting fraudulent reports to BT and failing to disclose or mis-representing a variety of things in a number of *fora*.[5]

## II

Plaintiff's claims against the moving defendants allege no independent basis of federal subject matter jurisdiction. Indeed, plaintiff concedes that there is none. Rather, it contends that the Court has, and should exercise, supplemental jurisdiction under Section 1367 of the Judicial Code.

Section 1367 in pertinent part confers supplemental jurisdiction "over all . . . claims that are so related to claims in the action within . . . [the court's] original jurisdiction that they form part of the case or controversy under Article III of the United States Constitution."[6] It then goes on to define circumstances in which a district court nevertheless may decline to exercise supplemental jurisdiction.[7] The statute therefore contemplates a two-tiered analysis. The first step is to determine whether the claim at issue comes within the court's power. If so, the second step requires determination whether that power should be exercised.[8]

Section 1367(a), which defines the scope of a district court's power to decide a claim, codifies the preexisting holding of the Supreme Court in the *Gibbs*[9] case.[10]

---

3. *Id.* ¶¶ 38–78.

4. Cpt. ¶¶ 161–72

5. *Id.* 173–81, 195–202, 86 S.Ct. 1130.

6. 28 U.S.C. § 1367(a).

7. *Id.* § 1367(c).

8. *E.g., Harry Winston, Inc. v. Kerr,* 72 F.Supp.2d 263, 264 (S.D.N.Y.1999). The district court should consider, among other factors, "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

9. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

10. *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 n. 2 (2d Cir.1993); *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992); *Smylis v. City of New York,* 983 F.Supp. 478, 483 (S.D.N.Y.1997); 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE· JURISDICTION 2D § 3567.1 (Supp.2002).

A court thus has the power to exercise supplemental jurisdiction over state claims if they derive from "a . . . nucleus of operative fact" common to the jurisdiction-conferring claim and if they "are such that [the claimant] would ordinarily be expected to try them all in one judicial proceeding. . . ." [11]

■ The claims against BT and these former outside directors do not satisfy this test. The TIA claim against BT is exceedingly narrow. It alleges that Semi–Tech was obliged under both the Act and the indenture to submit various officers' and auditor's certificates to BT as trustee, that BT was obliged to examine the evidence submitted to determine if they complied with the indenture, that BT failed properly to do so, and that BT consequently accepted deficient certificates and failed to notify note holders of defaults which, presumably, would have been apparent either from compliant certificates or the issuer's failure to provide them. [12] Thus, the core

of the TIA claim against BT—the only claim that arises under federal law—will be resolved by a comparison of the certificates that were provided with the requirements of the Act and the indenture.

■ The resolution of the claims against the moving defendants, on the other hand, go to the substance and fairness of the allegedly dishonest or imprudent Semi–Tech transactions, the states of mind and conduct of the directors, and other such issues that are irrelevant, or virtually so, to the TIA claim against BT. [13] The Court concludes that the TIA claim against BT and the common law claims against the moving defendants do not arise from a common nucleus of operative fact and are not such as one reasonably would expect to try in the same proceeding. The Court therefore lacks the power to hear the claims against the moving defendants. Similar considerations yield the further conclusion that this Court would decline to hear these claims, even if they were within

Section 1367(c), it might be noted, modified *Gibbs* with respect to the circumstances in which a district court is at liberty to decline to exercise supplemental jurisdiction. *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445–48 (2d Cir. 1998).

**11.** *Promisel*, 943 F.2d at 254 (quoting *United Mine Workers*, 383 U.S. at 725–26, 86 S.Ct. 1130) (internal quotation marks omitted); *see, e.g., Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir.2000) (holding that the court has supplemental jurisdiction over plaintiff's state law claims because they emanate from "the same set of facts that give rise to an anchoring federal question claim").

**12.** Cpt. ¶¶ 138–54.

**13.** It might be argued that there would be some commonality to the damages issues, assuming that BT were liable on the TIA claim and the director defendants on the quite different claims made against them, this on the premise that the measure of damages in each

case might be the loss to the note holders caused by the transactions in question. But that is far from clear, especially as any deficient certificates would have been submitted after the consummation of the transactions which resulted in the conditions that allegedly should have been revealed by the certificates. For example, if plaintiff is correct that the directors breached their fiduciary duties in approving the Pfaff transactions in November 1997 (*see* Cpt ¶¶ 51–54, 164(c)) and that the consummation of those transactions constituted defaults under the indenture by causing Singer's consolidated cash flow ratio to fall below 3:1 and because the transactions were inappropriate insider deals (*see id.* ¶¶ 53–54), those defaults would have been revealed only by an accurate and *subsequent* certificate (*see, e.g., id.* ¶¶ 138–54, especially ¶¶ 150–51). It is far from apparent that any loss to the note holders by virtue of any breach by BT of its duty to insist on proper certificates after the fact would be the same as the loss caused by the transaction that resulted in the default of which notice allegedly should have been given.

the Court's power. The factual and legal questions unique to the common law claims against the moving defendants simply overwhelm any questions common to the TIA claims against BT.[14]

### III

In view of the foregoing, there is no need to address any of the other grounds for the motion. The motion of defendants Gant, Smith and Davis to dismiss the complaint is granted on the ground that the Court lacks subject matter jurisdiction over the claims against them.

SO ORDERED.

---

**14.** *See, e.g., Smylis,* 983 F.Supp. at 483–84.